## City of Murray v. Irvan, et al.

(Decided May 18, 1916.)

## Appeal from Calloway Circuit Court.

1. **Municipal Corporations—Incurring Indebtedness in Excess of Annual Income—When Election Must be Held.**—An election held under section 157 of the Constitution to authorize a city to incur an indebtedness in excess of its yearly income, must be held on the general election day in November.

2. **Municipal Corporations—Election to Incur Indebtedness—When Taxpayer Entitled to Injunction to Prevent.**—Ordinarily a court of equity will not enjoin the holding of an election; but where the election is not one, in which a public office is involved, and the election would be void and cause unnecessary and improper expense, a taxpayer or other person who would be injured thereby, is entitled to an injunction.

JOSEPH G. CONNOR for appellant.

COLEMAN & LANCASTER for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE MILLER— Affirming.

Murray, in Calloway county, is a city of the fourth class. By an ordinance adopted March 15th, 1916, its general council called an election to be held May 20th, 1916, for the purpose of determining whether the city should increase its present indebtedness in the sum of $20,000.00 for the construction, operation, and maintenance of a municipal electric light and power plant.

Contending that an election of this character could legally be held only upon the general election day in November, the appellees, taxpayers of the city, brought this action to enjoin the holding of the election and the alleged unlawful expenditure of the public money for that purpose.

The circuit court granted the injunction, and the city and its officials appeal.

1. Section 157 of the Constitution provides that "no county, city, town, taxing district, or other, municipality shall be authorized or permitted to become indebted, in any manner or for any purpose, to an amount exceeding in any year, the income and revenue provided for such year, without the assent of two-thirds of the voters thereof, voting at an election to be held for

that purpose." The election in question was called pursuant to this section which merely requires the proposition for the city to exceed its yearly revenue, to be approved at "an election," without saying whether the approval might be given at an election held on a day different from the general election day provided by section 148 of the Constitution. That section provides that "no more than one election each year shall be held in this State or in any city, town, district or county thereof, except as otherwise provided in this Constitution;" and that, "all elections of State, county, city, town or district officers shall be held on the first Tuesday after the first Monday in November."

Section 155 excepts elections for school trustees from the control of section 148, *supra;* by section 61; local option elections "may be held on a day other than the regular election days;" and, by section 152, vacancies in the General Assembly may be filled at a special election.

These three provisions constituted the only exceptions to section 148 of the Constitution, as originally adopted; all other elections must be held on the first Tuesday after the first Monday in November. Belknap v. City of Louisville, 99 Ky. 474, 34 L. R. A. 256, 59 Am. St. Rep. 478; Morgan v. Goode, 151 Ky. 284.

Section 157a, being the amendment of 1909 to the Constitution, added another exception; but, that amendment applies only to elections concerning the creation of an indebtedness for public road purposes. Houston v. Boltz, 169 Ky. 647.

These authorities are conclusive of the proposition that an election held under section 157 of the Constitution must be held on the general election day in November and, that the chancellor was clearly right in so holding.

2. Ordinarily, a court of equity will not enjoin the holding of an illegal election, since the legality of the election and the title of officers there chosen are questions for a court of law in *quo warranto* proceedings. But, where the election is not one in which a public office is involved, and the election would be void, and cause unnecessary and improper expenses, a taxpayer or other person who would be injured thereby is entitled to an injunction. 2 Cyc. 886; Gibson v. Board of Supervisors, 80 Cal. 362; Macon v. Hughes, 110 Ga. 804; Sol-

omon v. Fleming, 34 Neb. 40; Oden v. Barbee, 103 Tex. 449; Commissioners v. Henderson, 122 Md. 533; Layton v. Mayor, 50 La. Ann. 121; Murfreesboro R. R. Co. v. Board of Commissioners, 108 N. C. 56.

In Allison v. L., H., C. & W. Ry. Co., 9 Bush. 252, injunction was held to be the proper remedy to prevent the issuance of bonds which had been voted at an election called without authority of law. If equity will enjoin the issuing of bonds thus voted, we see no good reason why it should not enjoin the illegal election in advance, and thereby save to the taxpayers an unnecessary and improper expense. Crampton v. Zabriskee, 101 U. S. 609.

In Solomon v. Fleming, *supra,* the county commissioners proposed to call an election to locate the county seat after a county seat had been selected at a previous election, whereupon certain taxpayers enjoined them from calling the second election.

In sustaining the remedy by injunction, the Supreme Court of Nebraska, said:

"We are bound to take notice that the relocation of a county seat, necessarily involving one, and possibly two or more elections, will impose no inconsiderable burden upon the people in the way of taxation. Since the county board were acting without authority of law in calling the election, we can see no reason why a complaining taxpayer should remain idle until the election had been held and the rights of innocent parties intervened."

Judgment affirmed.