CITY OF AUSTIN ET AL v. J. ALBERT THOMPSON.

No. A-1908. Decided March 23, 1949.
Rehearing overruled April 20, 1949.
(219 S. W., 2d Series, 57.)

*Trueman E. O'Quinn, Robert L. Burns* and *Joe B. Roberts,* all of Austin, for petitioners.

The Court of Civil Appeals erred in holding that the Court had the power and jurisdiction to enjoin the expenditure of funds by the City of Austin incidental only to the holding of an election, a political function, the holding of which the Court held it was without power to enjoin. City of Dallas v. Dallas, Con. Elec. St. Ry., 105 Texas 337, 148 S. W. 292; Richardson v. Mayes, 223 S. W. 546; Kennedy v. Broughton, 70 S. W. (2d) 500.

*John D. Cofer,* of Austin, for respondent.

There is no statute, or charter provision, authorizing the election in question, and therefore said election is void. It was the duty of the City Council, under its chater, to appoint someone to fill the vacancy on its council, not to call an election to have someone nominated for that position. The court should on a suit by a taxpayer enjoin the expenditure of public funds for the holding of a void and illegal election. Coffee v. Leib, 107 S. W. (2d) 406; Williams v. Glover, 259 S. W. 957; Hopkins v. Richmond, 117 Va. 692, 86 S. E. 139.

MR. JUSTICE HART delivered the opinion of the Court.

On June 3, 1948, Honorable Homer Thornberry, a member of the City Council of the City of Austin, resigned, thereby creating a vacancy in the City Council. On August 19, 1948, the City Council passed an ordinance which recited that "the City Council desires to receive nominations from the qualified voters of the City in order that the person receiving the highest number of votes may be named by the Council to fill said vacancy." The ordinance ordered an election to be held on October 5, 1948, "at which election there shall be nominated at large by the qualified voters of the City of Austin a Councilman for the unexpired term of Homer Thornberry who resigned June 3, 1948." Section 5 of the ordinance read as follows:

"That the candidate receiving the highest number of votes in said election shall be the nominee for Councilman; and the City Council will name said nominee as Councilman to fill the vacancy for the unexpired term of Homer Thornberry, resigned."

On September 11, 1948, the respondent, J. Albert Thompson, filed this suit against the City of Austin, the Mayor, the members of the City Council, and other named officials. He alleged that he was a taxpaying, resident citizen and voter in the City of Austin, that the election ordinance was void because it was contrary to the provisions of Article XVIII, Section 2 of the Charter of the City of Austin in that it was an effort by the Ctiy Council to evade its duty to fill the vacancy in the Council, and that in order to hold the election the City of Austin would be put to an illegal expense of approximately $2,000.00. The respondent prayed for a temporary restraining order to restrain the City and its officials from taking any steps preparatory to holding or from holding an election as provided by the ordinance, for a temporary injunction after hearing in the terms of the restraining order, and for a permanent injunction

against the holding of the election and the expenditure of any public funds in connection therewith.

On the same day that the petition was filed, the district court issued a temporary restraining order which recited that it appeared to the court that the defendants would unlawfully expend funds of the City in preparation for the holding of the election, and the defendants were restrained from doing or performing any act in connection with the holding of the election on October 5, 1948.

On September 17, 1948, the district court held a hearing in which he considered the plea in abatement and certain special exceptions which were presented by the City and its officers in their answer to the respondent's petition. In this hearing it was agreed that the court could consider also the relevant provisions of the City Charter, before and after its amendment in 1924, and the full provisions of the election ordinance of August 19, 1948. The district court sustained the City's pleas and exceptions, and the respondent having refused to amend his petition, the temporary restraining order was dissolved and the temporary injunction was denied.

The respondent appealed to the Court of Civil Appeals, which rendered judgment on October 2, 1948, without filing a written opinion. The judgment recited that since the respondent, as a taxpayer of the City of Austin, had no special interest in the election, the district court was correct in denying an injunction against the holding of the election. The judgment further recited, however, that the respondent as a taxpayer had the right to enjoin the unlawful expenditure of public funds and that the court was of the opinion that the threatened expenditure of approximately $2,000.00 for the purpose of holding the election was illegal in that the election was not authorized by the Charter of the City of Austin or any other law. The Court of Civil Appeals by its judgment issued a temporary injunction enjoining the City and its officials "from the further expenditure of public funds of the City of Austin in connection with the calling or holding of such election."

Two main questions are presented: first, whether the election ordinance was valid; and second, whether, even if the ordinance was invalid, the court had any authority to enjoin the election or the payment of any expenses which are incident to it.

The provision of the Charter of the City of Austin relating

to filling vacancies in the City Council is Article XVIII, Section 2, which reads as follows:

"Vacancies in the City Council shall be filled by the City Council for the remainder of the unexpired term, but any vacancy resulting from a recall election shall be filled in the manner provided in such cases."

This provision of the charter was adopted at a special election held on August 9, 1924, and at the same election the section of the original charter which related to the same subject was repealed. The repealed section read as follows (Art. VI, Sec. 3, Charter of the City of Austin, Spec. Laws, Reg. Sesss., 31st Leg., 1909, ch. 2, p. 19):

"Whenever a vacancy shall occur in the office of councilman the city council shall immediately order a special primary election for nominations for the office of councilman, which election shall be held within 30 days thereafter. Said special primary election shall be governed in all things by the provisions of Article 3 of this act, except as to the day of holding said election; provided, that in the event such vacancy should occur within ninety days of the next regular election to be held for mayor and city councilmen, then in such event no special primary election shall be held. A special election shall be held two weeks after said special primary election for the election of councilmen to fill the unexpired term of councilman, and said election shall be governed in all things by the provisions of Article 3 of this act."

The section of the City Charter relating to recall elections (Art. VIII, Sec. 1) provides in part as follows:

"If the majority of the votes case at such election shall be in favor of removal, the City Council shall immediately declare the result of said election, and declare said office vacant, and shall immediately order an election to fill such vacancy as hereinbefore provided."

A consideration of the quoted sections of the City Charter leads us to the conclusion that the City Council exceeded its authority in calling the election to fill the vacancy in the City Council. We think that the only fair and reasonable construction of the election ordinance is that the City Council bound itself to appoint the person receiving the highest number of votes in the election. The City Charter now plainly provides that the vacancy must be filled by the City Council itself. The purpose

of adopting the amendment to the Charter in 1924 obviously was to change the method of filling vacancies in the City Council from the cumbersome method of election to the more expeditous method of selection by the City Council. This purpose would be defeated by the construction of the Charter for which the City contends in this case. The fact that no election was intended in cases of vacancies caused by resignation or death is shown by the special provision for elections to be called in cases where vacancies were created as the result of real elections. It was the duty of the City Council to assume the responsibility and exercise the power of selecting a new member of the Council, and the Council was without authority to delegate this responsibility and power to the electorate. Where the City Charter prescirbes a method for exercising a power, this method is exclusive and must be followed. Foster v. City of Waco, 113 Texas 352, 255 S. W. 1104. While broad discretion in many instances is permitted the City Council in the exercise of its powers and authority, it must respect the express provisions of the Charter in instances where they are applicable. It cannot call an election, under the general provision of the Charter giving it this power, where the Charter provides that a vacancy must be filled in another way. We therefore conclude that the election ordinance was invalid because contrary to the provisions of the City Charter.

On the second question, however, we think that the court was without authority to issue an injunction against the election or the expenditure of public funds in connection with the holding of the election. In ordinary cases, an injunction against the expenditure of public funds to pay the expense of an election would have the same practical effect as an injunction against the holding of the election. Every election requires the services of election officials and the furnishing of supplies, as well as expenses in connection with publishing notices and setting up the polling places. It is not reasonable to expect that those who furnish their services or their property so that the election may be held will be willing, except in rare and unusual cases, to do so at their own expenses. To enjoin the expenditure of public funds to pay the expenses of holding an election would therefore ordinarily be a roundabout way of enjoining the election itself.

■ This court has adopted the view that it is beyond the power of a court of equity to enjoin an election or any incident to it, although the election may be called without authority and therefore absolutely void. The fundamental reasons for this rule of

decision, as stated in City of Dallas v. Dallas Consol. Electric Street Ry. Co., 105 Texas 337, 341, 148 S. W. 292, 294, are worth repeating here:

"Elections belong to the polictical branch of the government, and the general rule is that they are beyond the control of the judicial power. The authority resides in the courts to determine their validity, and in cases of invalidity to protect property rights which may become effective and is sought to be enforced; but a proper deference· for their respective powers that is imposed upon the several departments of the government should constrain the court to caution and certainty when their authority is invoked against the determination of the popular will. It should always be remembered that the separation of the great powers of government into different and distinctive departments, each independent in its own sphere and protected by constitutional limitations that neither can transcend but which all must respect, is the distinctive feature of our system, and its accomplishment is the fundamental fact of our history. * * *

"As elections are essentially the exercise of political power, it cannot be doubted that all action properly related thereto and necessary to their completion is from the same source, and is but the expression of the same power. The canvassing of the returns of an election is necessary to the determination of the result. It is an integral part of the election itself, without which the election is a vain proceeding; and as such inheres as a right sanctioned by the political power, as absolute as the right of the electorate to vote or for the election to be held. *When it is declared that because of their relation to· the political power of the government, elections are beyond the control of the judicial power, it is meant that the whole election, including every step and proceeding necessary to its completion, is exempt from judicial interference,* and the canvassing of the returns of an election must therefore be held as within the rule and justly entitled to its protection." (Emphasis added.)

The same conclusion was stated even more emphatically in Winder v. King (Tex. Com. App.), 1 S. W. (2d) 587. There an effort was made to enjoin the holding of an election, it being alleged "that said election, if held, would be void and a great expense to the taxpayers * * *." (See 1 S. W. (2d) at p. 587.) The court reached the conclusion that the election was called without authority and would be void (see 1 S. W. (2d) at p. 590):

"We are therefore of the opinion that the election ordered in Hansford county to be held on August 6, 1927, and all proceedings thereunder would be absolutely void. The defendants in error would be without jurisdiction to order said election, and such an election held less than two years from the previous election would be without legal effect."

Nevertheless, the court held that no injunction should be issued against even a void election, or any incident to it (see 1 S. W. (2d) at p. 589):

"The courts of this state have no jurisdiction to interfere with the political rights of the people to hold an election, and by holding the election is meant every step pertaining thereto, including the declaring of the result. *This rule obtains even though the election called and held is void.* The right to call and hold a void election is a political right that the courts have no jurisdiction to interfere with, but the right to enforce a void election in such a way as to violate the laws of this state would present a matter that the judicial power of the government would have the right to give relief from." (Emphasis added.)

In Leslie v. Griffin (Tex. Com. App.), 25 S. W. (2d) 820, 821, the court said that the question was no longer open:

"It is no longer an open question in this state that an election is essentially the exercise of political power, and, during its progress, is not subject to judicial control. This comprehends the whole election, including every step and proceeding necessary to its completion."

In Ex parte Barrett, 120 Texas 311, 37 S. W. (2d) 741, a suit was brought by taxpayers to enjoin an election on the ground that the election was not authorized by the statutes. The injunction was issued, but it was disobeyed by the relator, who was adjudged to be in contempt of court. The relator then sought a writ of habeas corpus from this court, which granted the writ on the ground that the injunction was void, regardless of whether the election was validly called (see 37 S. W. (2d) at p. 742):

"The holding of an election is a political function, and courts have no power to inquire into the validity of an election until it is completed. Regardless of whether the election be one which conforms to statutory requirements or not, the bare fact that the election is held would not affect private rights. Consequently the matter of stopping the progress of an election, merely for

the purpose of inquiring into its validity, lies outside of the general scope of judicial power. This constitutional principle, though sometimes overlooked, has been recognized and applied in a number of well-considered cases, and must be treated as settled."

These decisions by this court have been followed as settled law by the courts of civil appeals in many cases, including Harris v. Elder, 38 S. W. (2d) 352 (writ of error refused); League v. Brazoria County Road Dist. No. 13, 187 S. W. 1012; Noguess v. Burton, 10 S. W. (2d) 216; Temple Lumber Co. v. Commissioners' Court of Sabine County, 239 S. W. 668 (writ of error dismissed); Richardson v. Mayes, 223 S. W. 546 (writ of error dismissed); Lyle & Eiker v. Logan, 162 S. W. 1156; Watson v. Cochran, 171 S. W. 1067; Kennedy v. Broughton, 70 S. W. (2d) 500; Moore v. Plott, 206 S. W. 958; Fuller v. Mc-Haney, 192 S. W. 1159; City of Honey Springs v. Templeton, 194 S. W. (2d) 620 (writ of error refused, n. r. e.).

Only two case decided by this court, Oden v. Barbee, 103 Texas 449, 129 S. W. 602, and Roper Q Gilley v. Lumpkins, 111 Texas 107, 230 S. W. 144, are in any way inconsistent with the rule that elections will not be enjoined. In the first of these cases it appeared that the commissioners' court had annulled the order for the election and that private parties were attempting to hold the election without any kind of official authorization. The case is therefore distinguishable from the case before us, where the election ordinance stands unrevoked. In the Roper & Gilley case, a memorandum opinion was written by this court over seven years after a suit had been brought to enjoin a pool hall election. Both of the lower courts had refused to grant the injunction, and it is difficult to see why the case had not become moot, so far as the injunction against the election was concerned. However that may be, it seems evident that no consideration was given to the point of the court's power to enjoin elections. The opinion was written by Chief Justice Phillips, who also wrote the opinion in the City of Dallas case, cited above, but the opinion in the City of Dallas case is not referred to and the point is not discussed. In any event, the carefully considered and explicit declarations of this court after the Roper & Gilley case was handed down have settled the law so far as this court is concerned.

We regard the rule as sound which leads the courts to refuse to interefere with elections, for the reasons set forth at length in our previous decisions. The injury which any taxpayer will

suffer from the expense of an election is inconsiderable. It is of vastly greater importance that the courts refrain from interferring with the exercise of political functions. This consideration in our judgment clearly outweighs the reasons ordinarily sustaining the rule that the courts will enjoin the unlawful expenditure of public funds, as, for example, in Terrell v. Middleton (Tex. Civ. App.), 187 S. W. 367 writ of error refused, 108 Texas 14, 191 S. W. 1138). From a practical viewpoint it is also well to remember that it would usually be impossible to reach a final determination of an injunction suit before the time set for the election. This case illustrates the truth of this statement. If the courts were free to enjoin elections (or what would amount in most instances to practically the same thing, the expenditure of public funds to pay the expense of the elections), then it might occur that elections would be prevented by the granting of injunctions in the trial court, even though this court might eventually determine that the elections would have been entirely legal. We should not make possible such unwholesome situations.

We regard it as immaterial whether the election in the present case has already been held. Since the payment of the expense is a necessary incident to the election, we think the courts are without jurisdiction to enjoin the expenditure of the required public funds, either before or after the voting is completed.

The judgment of the Court of Civil Appeals is reversed and the judgment of the district court is affirmed.

Opinion delivered March 23, 1949.

MR. JUSTICE SMEDLEY dissenting.

I respectfully dissent from the holding of the majority of the Court that the Court of Civil Appeals erred in enjoining the expenditure of public funds of the City of Austin for the holding of the unauthorized election. The decision of the majority is that, notwithstanding the fact that it was the duty of the City Council under the charter to assume the responsibility and exercise the power of selecting a councilman to fill the vacancy and that the Council was without authority to delegate this responsibility and power by ordering an election, nevertheless suit cannot be maintained by a taxpayer to prevent the unauthorized expenditure of public funds in holding the election. Thus the taxpayers are left wholly without remedy to prevent the unauthorized expenditure.

The erroneous decision results from the application to this case of the general rule against enjoining elections, when there are two important facts, ignored by the majority, which make the rule inapplicable. The first of these is the fact that there was not even color of authority for ordering or holding the election and was not intended to be effective as an election; it was a mere recommendation to the City Council in the nature of a straw vote. The decision of the majority is directly contrary to Roper & Gilley v. Lumpkins, 111 Texas 107, 230 S. W. 144.

I agree with the conclusion of the majority that the ordinance ordering the election was wholly unauthorized and was contrary to the express provision of the charter.

The courts of this State, at the suit of a taxpayer, will enjoin the illegal or unauthorized expenditure of public funds. Terrell v. Middleton, 187 S. W. 367, application for writ of error refused, 108 Texas 14, 191 S. W. 1138; Foster v. City of Waco, 113 Texas 352, 255 S. W. 1104; Osborne v. Keith, 142 Texas 262, 177 S. W. (2d) 198. It seems to follow that since the ordering of the election was without lawful authority and the expenditure of public funds to hold the election was also unauthorized, the taxpayers should be permitted to maintain suit to enjoin the unauthorized expenditure. The opinion of the majority, however, permits this well settled rule, which affords the taxpayers a remedy to protect public funds from waste, to be overridden by the general rule that the holding of an election is a political proceeding which cannot be enjoined. The opinion reasons that since elections cannot be enjoined, the expenditure of public funds for holding them cannot be enjoined. The opinion rests primarily upon City of Dallas v. Dallas Consolidated Street Railway Company, 105 Texas 357, 148 S. W. 292, and also upon several decisions of the Commission of Appeals and of the courts of civil appeals which follow that case.

Since the opinion of the majority treats the election which was held in Austin as an election and denies to the taxpayers the right to maintain suit to prevent the unauthorized expenditure of public funds, on the theory that preventing the expenditure would interfere with an election, the case will be considered first as if the election was in fact an election and was intended to be effective as an election.

It has been said many times that there can be no valid election if the same has not been called by lawful authority,

and that an election held without lawful authority behind it is universally recognized as a nullity. Countz v. Mitchell, 120 Texas 324, 334, 38 S. W. (2d) 770, 774; Smith v. Morton Independent School District, 85 S. W. (2d) 853; 857; State ex rel Van Amringe v. Taylor, 108 N. C. 196, 12 S. E. 1005, 12 L. R. A. 202; People ex rel Lynch v. Budd, 114 Cal. 168, 45 Pac. 1060, 34 L. R. A. 46, 48; Howell v. Bain, 176 Ore. 187, 156 Pac. (2d) 576, 578; 29 C. J. S. p. 90, Sec. 66; 18 Am. Jur. p. 243, Sec. 100; 42 Am. Jur. pp. 975-976, Sec. 130.

Many cases deal with the question of enjoining elections. an examination of them reveals conflicts of decision and some confusion and shows that the general rule that elections may not be enjoined is not without its exceptions. See 18 American Jurisprudence, pp. 254-256, Sec. 117, and Annotations in 33 A. L. R. pp. 1376-1388; 70 A. L. R. pp. 733-740; 1 A. L. R. (2d) pp. 588-612. Perhaps the most important of the reasons given for the general rule are, first, that holding an election, canvassing the returns and certifying the result are political powers or functions with which a court of equity will not interfere, and second, that usually there is an adequate remedy at law, as by contest of the election or other procedure provided by statute or by quo warranto. The second of these reasons is usually deemed sufficient of itself to defeat an effort to enjoin an election of a public official, for the remedy of contest or quo warranto is regarded as adequate. City of Murray v. Irvan, 170 Ky. 290, 185 S. W. 859; City of Macon v. Hughes, 110 Ga. 795, 36 S. E. 247, 251. But as to the first it seems, on principle and in view of the authorities which have been cited above, holding that an election wholly unauthorized by law is of no effect whatever, that the holding of an election without lawful authority is not the exercise of a political power or function, and that injunction should issue at the suit of a taxpayer to prevent the expenditure of public funds therefor, when there is no other adequate remedy. A contest or other suit after the election would not restore the public funds spent in holding it. Once spent they usually cannot be recovered from those to whom they have been paid.

Many carefully considered cases hold that where there is no authority whatever for holding an election a taxpayer may maintain a suit to enjoin the election, in order to prevent the unauthorized expenditure of public funds. Solomon v. Fleming, 34 Neb. 40, 51 N. W. 304; Harnett v. Sacramento County, 195 Cal. 676, 235 Pac. 445; Dennis v. Prather, 212 Ala. 449, 103 So. 59; Cascaden v. City of Waterloo, 106 Iowa 673, 77 N. W.

333; City of Macon v. Hughes, 110 Ga. 795, 36 S. E. 247; De Kalb County v. City of Atlanta, 132 Ga. 727, 65 S. E. 72; Talbert v. Long, 134 Ga. 292, 67 S. E. 826, 137 Am. St. Rep. 222; see also Springs v. Clark, 45 Wyo. 62, 14 Pac. (2d) 667, 83 A. L. R. 1364; Griffith v. Board of Education, 183 N. C. 408, 112 S. E. 10; Duval County v. Jennings, 121 Fla. 584, 164 So. 356; City of Murray v. Irvan, 170 Ky. 290, 185 S. W. 859; Hawke v. Smith, 253 U. S. 221, 64 L. Ed. 871, 40 Sup. Ct. 495; 18 Am. Jur. pp. 255-256, Sec. 117.

The opinion in City of Macon v. Hughes, above cited, contains this query: "But if a court of equity will enjoin a municipal corporation from issuing bonds or erecting buildings and similar acts, when they are unauthorized, why may it not enjoin the holding of an election for which there is no warrant in law?"

The foregoing decisions in my opinion announce a reasonable rule which we should follow, that is, that when there is no lawful authority whatever for ordering or holding an election, injunction should issue to prevent the waste of public funds in a proceeding which is unauthorized and, being unauthorized, can have no effect. The opinion of the majority, however, goes so far as to hold that when there is no authority for holding an election, and even where to hold it is contrary to fundamental law, here the city charter, a court can neither enjoin the holding of the election nor the expenditure of public funds in holding it. The decision is directly contrary to the decision and judgment of this Court in Roper & Gilley v. Lumpkins, 111 Texas 107, 230 S. W. 144, where the Court reversed the judgments of the district court and the Court of Civil Appeals, and "proceeding to render such judgment as should have been rendered," granted the injunction in the terms of the prayer of the plaintiffs' petition, enjoining the holding of the election and the creation and payment of any debt therefor. The Act under which the election was ordered had not been held unconstitutional by the Supreme Court when the judgments of two lower courts were rendered. Roper & Gilley v. Lumpkins, read in the light of the judgment rendered by the Court and entered in its minutes, holds that an election may be enjoined when there is no lawful authority whatever for holding it. The election enjoined by the Supreme Court in that case was ordered under a statute that was unconstitutional and the unconstitutionality of the statute had not been determined by the Supreme Court at the time when, according to the decision and judgment of the Supreme Court, injunction against the holding

of the election and the payment of any debt therefor should have been issued.

The opinion of the majority deprecates Roper & Gilley v. Lumpkin by referring to it as a memorandum opinion and by ignoring the judgment entered on the Court's minutes in that case, which clearly discloses the opinion of the Court that the election should have been enjoined by the district court and by the Court of Civil Appeals. The "memorandum opinion" was written by Chief Justice Phillips and the judgment was doubtless entered under his direction. Either he and the other members of the Court intended to qualify the sweeping language of the opinion in the Consolidated Street Railway Company case or they recognized basic differences between the two cases.

There are valid ground for distinguishing the two cases, some of which are discussed in the briefs in the Roper & Gilley case, which were before Chief Justice Phillips. The opinion in City of Dallas v. Consolidated Street Railway Company, 105 Texas 337, 342, 148 S. W. 292, points out that "the election was had under color of authority". The implication is that the ruling might have been different had the election been held without any authority whatever. In the case before us the election was ordered without any authority whatever and contrary to the provisions of the city charter. It was neither ordered nor held under color of authority. This being true, the election was not the exercise of a political function, and the unauthorized use of public funds to hold the election should be enjoined.

The election involved in this case has been treated above as of it were a true election, for the opinion of the majority refuses to enjoin the unauthorized expenditure of public funds on the theory that the expenditure is a part of or is incidental to an election. But was this in fact an election? The election that is protected from injunction as a political power or function, is not required to be one held at least under color of authority, must be one that is meant to be effective as an election. If it is for the selection of an officer, it should intend that the one chosen at the election be entitled to the office in virtue of the election. In an election the right to the office is established by the result of the election and does not depend upon the issuance of the commission, which is merely a ministerial act. Conger v. Gilmer, 32 Cal. 75, 80.

The election ordered by the City Council of Austin would not be, and according to the terms of the ordinance calling it

was not intended to be, a true or effective election. The ordinance recites that *"The City Council desires to receive nominations from the qualified voters of the City in order that the person receiving the highest number of votes may be named by the Council to fill said vacancy."* Here the Council recognized the fact that the election would not and could not fill the vacancy, but that after the election the Council would still be required to "name", that is, to appoint, the councilman. After the recital, the ordinance proceeds to ordain that. an election be held, *"at which election there shall be nominated at large by the qualified voters of the City of Austin a Councilman for the unexpired term,"* etc. Another section of the ordinance provides that "the candidate receiving the highest number of votes in said election shall be the nominee for Councilman; and the City Council will name said nominee as Councilman." The election as ordered was for the purpose of obtaining from the voters a nomination or a recommendation of a councilman for the vacancy. The person receiving the highest number of votes at such an election would not be entitled to the office in virtue of the election. He could not compel the City Council to appoint him. The Council could not bind itself to make the appointment in accordance with the result of the election, because the duty and the authority to make the appointment on its own judgment still rested upon it. The election therefore would not be in fact an election. It was merely a means of obtaining from those who went to the polls the expression of their choice or recommendation, which the Council was free to follow or to disregard.

We find in the charter no authority for thus using public funds to hold an election for the purpose of getting advice or recommendation from the voters as to what the Council should do in the performance of its duty to make the appointment. If the public funds could be used in this manner and for this purpose, then the City Council, whenever it desired to do so, could use public funds for an election in order to be advised what to do in making appointment of any official that it is authorized by the charter to appoint, or in the performance of any other duty imposed upon it.

Since the election was ordered without authority, and would not be, and according to the terms of the ordinance was not intended to be, effective as an election, the use of the public funds for holding it was unauthorized and injunction to prevent such a use of the public funds would not be an interference with a political function. The expenditure of the public funds would

not be merely incidental and unimportant. It is of the substance of the taxpayer's complaint and the holding of the unauthorized and ineffective election is the incident.

Te judgment of the Court of Civil Appeals should be affirmed.

Opinion delivered March 23, 1949.

Associate Justices Brewster, Folley and Harvey join in this dissent.

Rehearing overruled April 20, 1949.