Jack HARRISON, County Judge, et al.,
Appellants,

v.

Lee H. PRICE et al., Appellees.

No. 12798.

Court of Civil Appeals of Texas.

Galveston.

Dec. 2, 1954.

Rehearing Denied Jan. 13, 1955.

Sam H. Bass, Freeport, Looney, Clark & Moorhead, Everett L. Looney, R. Dean Moorhead, Austin, for appellants.

Higgins, Evans & Goff, Richard J. Higgins, W. D. Evans, Angleton, for appellees.

HAMBLEN, Chief Justice.

The appellees sued Jack Harrison, in his official capacity as County Judge of Brazoria County, praying that as such County Judge, he be restrained and enjoined from calling an election to abolish the corporate existence of the Town of Clute City, and also to enjoin the other appellants herein, and others similarly situated (a class suit), from petitioning for any such an election, until the town's water-system and sewer-system bonds had been first sold, and the improvements to be constructed from the proceeds of such bonds had been completed, and put into working order.

The appealed-from judgment restrained and enjoined the County Judge from calling such election, and the other appellants—as such citizens—from further petitioning for such an election. All the appellants excepted to such order, and have prosecuted this appeal.

The trial court, in substantial substance, filed these findings of fact and law:

"Findings of Fact

"1. The town of Clute City, Texas, was duly incorporated by election held on May 31, 1952, the results of such election being 417 for incorporation, and 234 against incorporation, with a majority of 183 votes being for incorporation, and that such proceedings were duly validated by judgment in Cause No. 33,982, which judgment was approved by the Court of Civil Appeals, First Supreme Judicial District of Texas.

"2. That the town of Clute City, Texas, authorized the issuance of $250,000.00 water system revenue bonds by election held on the 11th day of October, 1952, the results of such election being 169 for the issuance of such bonds and 50 against the issuance of such bonds, with a majority of 119 votes being for the issuance of such bonds.

"3. That the town of Clute City, Texas, authorized the issuance of $250,000.00 sewer-system revenue bonds by election held on the 11th day of October, 1952, the results of such election being 167 for the issuance of such bonds and 48 against the issuance of such bonds, with a majority of 119 votes being for the issuance for such bonds.

"4. That an election was held on June 30, 1953, to determine whether the town of Clute City, Texas, should be abolished as a municipal corporation, the results of such election being 310 'against abolishing the municipal corporation' and 210 'for abolishing the municipal corporation' with a majority of 100 votes being against abolishing the municipal corporation.

"5. That the validity of the town of Clute City, Texas, was established by the 53rd Legislature, as incorporated in Art. 966c of V.A.T.S.

"6. That an election was held on April 27, 1954, to determine whether the town of Clute City, Texas, should be abolished as a municipal corporation, the results of such election being 402 'against abolishing the municipal corporation' and 316 'for abolishing the municipal corporation', with a majority of 86 votes being against abolishing the municipal corporation.

"7. That a petition calling for an election to abolish the corporate existence of the town of Clute City, Texas, was filed with Jack Harrison, County Judge of Brazoria County, Texas, on the 16th day of July, 1954, and that a hearing was set for July 31, 1954, to call an election for the abolishing of the municipal corporation of the town of Clute City, Texas, and that such petition is sufficient in all respects.

"8. That 63 signers of the petition which was filed on the 16th day of July, 1954, were signers of the petition calling the election which was held on April 27, 1954.

"9. That some of the citizens of the town of Clute City, Texas, who reside within the city limits of the corporation do not have an adequate supply of water, and that such lack of water facilities is a hazard to the health of these and other citizens of Clute City, Texas.

"10. That the town of Clute City, Texas, has suffered damages in the amount of $31,074.00, which damage was caused by the delay of the installation of sewer and water facilities through the period from January 15, 1953, to May 25, 1954, and as a corollary thereof the citizens of the town of Clute City, Texas, have been damaged.

"11. That the property values in the town of Clute City, Texas, have been diminished as a result of the repititious filing of petitions for the abolition of the corporate existence of the town of Clute City, Texas.

"12. That the marketability of the bonds proposed to be issued by the town of Clute City, Texas, has been diminished.

"13. That the town of Clute City, Texas, is located within a critical defense area and would be eligible to make application for Federal aid grants or loans through the Housing and Home Finance Agency, an agency of the United States Government.

"14. That the sale of the bonds of the town of Clute City, Texas, cannot be accomplished while there is any attack on the existence of the corporate existence of the town of Clute City, Texas.

"15. That the Plaintiffs R. C. Thomas, D. M. Kimbrough and Willie Kendricks suffered substantial damages as a result of the continuing attacks on the existence of the town of Clute City, Texas, through the filing of the quo warranto proceedings and the filing of three petitions for the abolition of the corporate existence of the town of Clute City, Texas.

"16. That the proponents for the abolition of the corporate existence of the town of Clute City, Texas, will continue to file petitions for the abolition of the corporate existence of the town of Clute City, Texas.

'Conclusions of Law

"1. That the Plaintiffs have suffered irreparable damage and that they have no adequate remedy at law.

"2. That the filing of three petitions for the abolition of the corporate existence of the town of Clute City, Texas, within a period of 26 months constitutes a nuisance, and that such actions by the Defendants are an attempt to vex, harass and annoy the Plaintiffs.

"3. That a court of equity has jurisdiction of this matter so as to avoid needless litigation, and that an injunction should issue restraining the further calling of any election as public policy requires that there be an end to legal controversies.

"4. I find as a matter of law that this is an attempt by a minority to nullify the acts of the majority, and that such is not the intent of the statute providing for the calling of an election for the abolition of the corporate existence of a municipal corporation."

 The proposition that a political right may be so exercised as to constitute a private nuisance, even though the statutes governing the exercise of such right be strictly complied with, is one which is not only without precedential support in this State, but is contrary to the decisions of our courts in cases which are in any way factually analogous to the instant case. In City of Dallas v. Dallas Consolidated Electric St. Railway Co., 105 Tex. 337, 148 S.W. 292, the Supreme Court of Texas held that elections, being essentially the exercise of political power, are exempt from judicial interference. This decision has been repeatedly followed, and has been extended in its application to elections which are void. Leslie v. Griffin, Tex.Com.App., 25 S.W.2d 820; Ex parte Barrett, Tex.Com.App., 120 Tex. 311, 37 S.W.2d 741; City of Austin v. Thompson, 147 Tex. 639, 219 S.W.2d 57. Numerous other authorities to the same effect might be cited. Appellees insist however that in none of such cases are there present the facts here present, which, they contend, justify the application of a different rule in this case. These facts are namely the repeated petitioning by essentially the same individuals for the holding of elections upon the same subject matter, i. e., the abolition of the corporate existence of a municipality.

The rationale of appellees' argument is that three elections within twenty-six months having resulted adversely to those persons seeking abolition, justifies the conclusion that the election which has been enjoined could have no other result, and that the appellants, in petitioning for same, were not in good faith exercising a political right, but were attempting to exercise the same for the sole purpose of vexing, harassing and annoying the appellees, thus constituting the nuisance. Their contention appears to have no other basis. That such is the theory upon which the trial court acted is manifested by the conclusions of law which were filed.

If the facts in this case were limited to those which have been stated heretofore, appellees' argument would be most persuasive. Similar injunctions have been upheld in other jurisdictions. See 43 C.J.S., Injunctions, § 115, p. 644. The lack of legal precedent in Texas might well result from the lack of factual precedent, and is not, as appellees properly state, a fatal objection to the granting of an injunction. 43 C.J.S., Injunctions, § 19, p. 429.

However, after the heretofore stated findings and conclusions had been filed by the trial court, appellants requested, and the court filed, additional finding number 4 as follows: "4. That subsequent to the holding of the last election on April 27, 1954, and prior to the filing of the petition for the calling of the present election there was de-annexed from the town of Clute City, Texas, by city ordinance number 38, and by judgment of the District Court of Brazoria County, Texas, cause number 35,420, an area containing approximately three hundred acres." This finding of fact is unchallenged by appellees. The undisputed facts show that the petition of the election which has been enjoined was filed on July 16, 1954, some two weeks after the de-annexation.

It appears to this Court that this fact of de-annexation makes it impossible to conclude that the result of the enjoined election would be the same as the previous elections, which conclusion is necessary to sup-

port the corollary conclusion that appellants petitioned not in good faith, but only to harass, vex and annoy appellees. Lacking such support, no theory has been advanced, nor is any apparent to this Court which entitles appellees to the relief granted. We therefore find it unnecessary to review the arguments and authorities presented by the litigants which might otherwise be applicable, and conclude that upon the record now presented, the judgment of the trial court must be reversed and the cause remanded with instructions to dissolve the injunction.

Reversed and remanded with instructions.

GRAVES, J., not sitting.