ACCEPTED
15-24-00077-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
2/10/2025 3:56 PM
CHRISTOPHER A. PRINE
CLERK

No. 15-24-00077-CV

_____

IN THE FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS

RECEIVED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
2/10/2025 3:56:34 PM
CHRISTOPHER A. PRINE
Clerk

_____

THE STATE OF TEXAS,
Appellant

v.

THE CITY OF AUSTIN; KIRK PRESTON WATSON, MAYOR OF
AUSTIN; PAIGE ELLIS, MAYOR PRO TEM OF AUSTIN; NATASHA
HARPER-MADISON, VANESSA FUENTES, JOSE VELASQUEZ, JOSE
"CHITO" VELA, RYAN ALTER, MACKENZIE KELLY, LESLIE POOL,
ZOHAIB "ZO" QADRI, AND ALISON ALTER, MEMBERS OF THE CITY
COUNCIL OF AUSTIN; T.C. BROADNAX, CITY MANAGER OF
AUSTIN; AND ROBIN HENDERSON, INTERIM CHIEF OF POLICE OF
AUSTIN; IN THEIR OFFICIAL CAPACITIES,
Appellees.

_____

Appeal from Cause No. D-1-GN-24-000586
419th Judicial District Court of Travis County, Texas

_____

**AMICUS BRIEF OF INTERNATIONAL MUNICIPAL LAWYERS
ASSOCIATION**

_____

William M. "Mick" McKamie
Bessie Bronstein
TAYLOR, OLSON, ADKINS, SRALLA
& ELAM, LLP
6000 Western Place, Suite 200
Fort Worth, TX  76107
**COUNSEL FOR AMICUS CURIAE**

## Identity of Parties and Counsel

**Amicus Curiae:**
International Municipal Lawyers Association
William M. "Mick" McKamie
Bessie Bronstein
Taylor, Olson, Adkins, Sralla & Elam, LLP
6000 Western Place, Suite 200
Fort Worth, Texas  76107

**Appellant:**
The State of Texas

**Appellate and Trial Counsel for Appellants:**
Ken Paxton
Brent Webster
Grant Dorfman (currently sitting as Judge of the 11th Business Court Division)
Ralph Molina
Aaron L. Nielson
Ryan D. Walters
Cory A. Scanlon (lead counsel)
Ryan Kercher
Heather Dyer (currently employed with Daniel Stark, P.C.)
Jacob Przada
Ethan Q. Szumanski (currently employed as judicial law clerk to Hon. Drew B. Tipton,
United States District Judge for the Southern District of Texas)
Johnathan Stone
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711-2548
(512) 936-1700
Cory.Scanlon@oag.texas.gov

**Appellees:**
City of Austin
Kirk Preston Watson, Mayor of Austin, in his Official Capacity
Paige Ellis, Mayor Pro Tem of Austin, in her Official Capacity
Robin Henderson, Interim Chief of Police of Austin, in her Official Capacity

T.C. Broadnax,[1] City Manager of Austin, in his Official Capacity
Natasha Harper-Madison, Vanessa Fuentes, Jose Velasquez, Jose "Chito" Vela, Ryan Alter, Mackenzie Kelly, Leslie Pool, Zohaib "Zo" Qadri, and Alison Alter, Members of the City Council of Austin, in their Official Capacities
**Appellate and Trial Counsel for Appellees:**
Anne L. Morgan
Meghan L. Riley
Sara Schaefer
Brandon J. Mickle
Hannah M. Vahl
City of Austin Law Department
P.O. Box 1546
Austin, Texas 78767-1546
(512) 974-1536
Sara.Schaefer@austintexas.gov

---

[1] This lawsuit was originally brought against Interim City Manager Jesus Garza, who has been replaced in the role of City Manager by T.C. Broadnax. *See* Tex. R. App. P.7.2(a).

# TABLE OF CONTENTS

**Identity of Parties and Counsel** ..............................................................................2

**INDEX OF AUTHORITIES**.................................................................................5

**INTEREST OF AMICUS CURIAE**.....................................................................6

**STATEMENT OF FACTS**....................................................................................7

**ARGUMENT**.........................................................................................................8

    **I.**    **The Issue of Full Enforcement** ................................................................8

    **II.**   **The Matter of Resource Allocation**........................................................9

    **III.** **The Authority of Home Rule Cities**......................................................12

      **A.**   **Home Rule in Texas** .....................................................................12

      **B.**   **The Right to Initiative Elections** .................................................13

    **IV.** **The Broader Question: When Can the State Preempt Citizens?** .........15

    **V.**   **The Bastrop Letter** .................................................................................15

**PRAYER** ...............................................................................................................16

**CERTIFICATE OF SERVICE** ..........................................................................17

**CERTIFICATE OF COMPLIANCE** .................................................................17

# INDEX OF AUTHORITIES

**Cases**

*City of Austin v. Thompson*, 219 S.W.2d 57 (Tex. 1949) ..................................... 14

*Glass v. Smith*, 244 S.W.2d 645 (Tex. 1951) ...................................................... 14

*In re Morris*, 663 S.W.3d 589 (Tex. 2023) ................................................... 13, 14

**Statutes**

Texas Health and Safety Code, Section 481.121 ................................................... 9

Tex. Local Gov't Code § 51.072 ......................................................................... 13

**Rules**

Texas Rule of Appellate Procedure 9.4 ............................................................... 17

Texas Rules of Appellate Procedure 11 ................................................................ 6

**Other**

Austin American Statesman, Jan. 30, 2025, https://www.msn.com/en-us/news/us/bastrop-city-council-denies-marijuana-decriminalization-amendment-despite-voter-approval/ar-AA1y7r3S?ocid=BingNewsSerp ................................ 16

Austin, Tex. City Charter, art. IV, § 1 .................................................................. 7

Austin, Tex. City Charter, art. IV, § 5 ................................................................ 14

City of Saginaw Fiscal Year 2025 GFOA Budget Book,

https://www.ci.saginaw.tx.us/departments/finance/budget_fy25.php ................... 11

FOX 7 Austin, Jan, 2. 2024, https://www.fox7austin.com/news/police-department-staffing-crisis-austin-911-call ................................................................... 10, 11

KXAN.com, Jul. 1, 2024, https://www.kxan.com/news/local/austin/apd-staffing-shortage-continues-with-over-330-sworn-officer-vacancies/ .............................. 10

Texas Comptroller https://comptroller.texas.gov/transparency/local/cities.php .... 10

Texas Constitution article 11, section 7 .............................................................. 12

Texas Municipal League, Texas Home Rule Charters – Second Edition (2010) .. 13

## INTEREST OF AMICUS CURIAE

This case concerns an Ordinance of the City of Austin, Texas.

Pursuant to Texas Rules of Appellate Procedure 11, amicus curiae, **International Municipal Lawyers Association,** respectfully submits this brief in support of the Appellees and urges the Court to affirm the district court's order denying the State's application for temporary injunction and granting Defendants' plea to the jurisdiction allowing enforcement of the Ordinance "Elimination of Marijuana Enforcement." The City of Austin, Texas, has not paid nor contributed money for the preparation of this brief, and copies have been served upon all parties.

The International Municipal Lawyers Association ("IMLA") is a non-profit organization of more than 2,500 members dedicated to advancing the interests and education of local government lawyers. It is the only national organization devoted exclusively to local government law. For nearly 90 years, it has been an educator and advocate for its members, which include cities, towns, villages, townships, counties, water and sewer authorities, transit authorities, attorneys focused on local government law, and others. Its mission is to advance the responsible development of municipal law through education and advocacy by providing the collective viewpoint of local governments around the country on legal issues before the Supreme Court of the United States, the United States Courts of Appeals, and state supreme and appellate courts.

## STATEMENT OF FACTS

In 2022, the legal landscape around marijuana was drastically changing. Marijuana alternatives were flooding the market, utilizing the Hemp Bill as a way to allow legal marijuana products to be sold over the counter as easily as chewing gum or potato chips.

In May 2022, Austin voters overwhelmingly passed a citizen-initiated ballot proposition that enforced misdemeanor marijuana possession through seizure but limited citations and arrests unless to further an investigation of a violent felony or high priority felony level narcotics case. The citizens recognized the difficulty and expense of prosecuting standalone marijuana crimes, and voted for the City to shift their resources to violent felonies and felony drug crime, instead of misdemeanor marijuana crimes.

Under the Austin City Charter, Austin citizens retain the power of direct legislation by initiative. Austin, Tex. City Charter, art. IV, § 1. A citizen group collected 33,332 signatures to place on the May 7, 2022 ballot Ordinance, which regulated the enforcement of low-level marijuana possession offenses. RR.3, Defs' Ex. 3: Certificate of Sufficiency of Initiative Petition. The Ordinance passed overwhelmingly on a vote of 58,119 to 9,857, with 85 percent of voters voting in favor. RR.3, Defs' Ex. 4: Resolution No. 20220517-001.

**ARGUMENT**

## I.    The Issue of Full Enforcement

The practical implications of enforcing Texas drug laws to their "fullest" extent illustrate the untenable burden such an approach would place on law enforcement, prosecutorial resources, and municipal governance.

Consider a hypothetical but common scenario: Police officers respond to a noise complaint at a residential party on a Saturday night. Upon entry, they observe what appear to be two marijuana joints on the living room table and four college students present.  The officers have two possible courses of action:

1.    Discretionary Enforcement: The officers seize the joints, issue a warning, and instruct the students to avoid disturbing their neighbors. This action effectively ends the criminal activity while preserving community resources and law enforcement bandwidth.

2.    Full Enforcement: The officers arrest all four students for possession, as Texas law considers even minimal drug possession a criminal offense. This enforcement approach necessitates the following:

- Transporting all individuals to jail.

- Booking, fingerprinting, and processing each suspect.

- Housing them overnight until a magistrate hearing.

- Testing the joints to confirm that they are in fact marijuana.

- Prosecutorial review to determine whether the case warrants full adjudication.

- Potential criminal prosecution under Texas law for possession of marijuana (less than two ounces), a Class B misdemeanor punishable by up to 180 days in jail and a fine of up to $2,000. Texas Health and Safety Code, Section 481.121

This rigid approach imposes an unfunded mandate, forcing significant financial and administrative burdens on municipal and county resources. Local taxpayers ultimately bear the cost of jail time, testing, court proceedings, and public defender expenses, should indigent defense be required.

In jurisdictions such as Austin, local taxpayers have signaled that the prioritization of marijuana enforcement is an inefficient use of municipal resources. Austin has chosen to allocate resources toward community needs that align with its citizens' priorities—an approach consistent with established principles of local governance.

## II.    The Matter of Resource Allocation

While this case concerns Austin, the ambiguity surrounding "full enforcement" has statewide implications, affecting all Texas municipalities, regardless of size.

Texas is home to 1,224 incorporated municipalities, of which nearly 400 have fewer than 1,000 residents. Texas Comptroller, https://comptroller.texas.gov/transparency/local/cities.php. It is not until the 400 largest cities are considered that populations exceed 5,000, allowing Home Rule governance under Texas law. The practical necessity of resource allocation within these municipalities becomes immediately apparent.

Austin is a textbook example of this resource dilemma and makes the State's decision to insist on marijuana misdemeanor arrest in lieu of seizure all the more perplexing. Against ever-increasing responsibilities being thrust upon its law enforcement personnel, including response to the confounding problems of homelessness and mental illness, Austin is operating with a profound shortage of more than 300 police officers--and a deficit of more than 460 personnel when all law enforcement sworn, civilian, and emergency communications-civilian positions are counted. Taylor Girtman, *APD staffing shortage continues with over 330 unfilled positions*, KXAN.com, Jul. 1, 2024, https://www.kxan.com/news/local/austin/apd-staffing-shortage-continues-with-over-330-sworn-officer-vacancies/. This shortage is significantly hindering street-level protection of Austin residents, as evidenced in an interview with Austin Police Association President Michael Bullock: "Right now, the biggest priority is how we allocate what few resources we have to where it's the most effective," Meredith Aldis, *Austin police staffing crisis: Shift consolidation*

*could affect 911 call response time*, FOX 7 Austin, Jan, 2. 2024,

https://www.fox7austin.com/news/police-department-staffing-crisis-austin-911-call

Bullock further states that evening shifts, which are typically staffed by 10 officers, are now making do with far fewer, and responses to 911 calls are sometimes taking hours:

> Currently, there are nine sectors in the City of Austin. When the police department is fully staffed, each sector usually has about 10 officers working each shift and the shifts tend to overlap during peak hours, so more officers can respond then. Bullock said that isn't happening right now. "Right now, most evening shifts are showing up at around 4 p.m., four officers that might be able to show up, and there are some I know that are at two, and I know there are shifts that have showed up with one officer," Bullock said. Bullock said what's happening now isn't safe for officers, and it's not effectively serving the community. "There will be 15 or 20 calls that are holding, that officers have not been able to get to, and they've been holding for 2, 4, 10 hours," Bullock said. *Id.*

The issue of resource allocation also hits localities like the City of Saginaw, Texas, a Home Rule city with a population of 25,000 residents. City of Saginaw Fiscal Year 2025 GFOA Budget Book, Pages 176 and 26 (FY 2024-2025). https://www.ci.saginaw.tx.us/departments/finance/budget_fy25.php. Over the past four years, Saginaw has experienced a 27% increase in reported crime. *Id.* at 99. Its police department consists of only 42 officers, excluding non-field personnel such as dispatchers and jailers. *Id.* at 94. Historically, the department has been able to clear only 50% of reported offenses. *Id.* at 98-99.

Under a mandate of full enforcement, Saginaw would be forced to reallocate limited resources to drug possession cases—cases that may otherwise be deprioritized in favor of violent crime investigations or community policing efforts.

**Key Questions on Resource Allocation**:

1.      Defunding Drug Enforcement: If a city elects to reallocate drug enforcement funds toward infrastructure needs—such as rising utility costs—does that constitute a violation of "full enforcement" requirements?

2.      Prosecutorial Discretion: If a prosecutor offers a 17-year-old first-time offender the opportunity to take a drug education course and complete three clean drug tests in lieu of criminal charges, has the prosecutor failed to "fully enforce" the law?

These questions highlight the fundamental issue with the State's undefined mandate: it creates a chilling effect on local discretion, forcing cities and law enforcement agencies into a one-size-fits-all enforcement strategy that fails to account for jurisdictional differences.

## III.   The Authority of Home Rule Cities

### A.     Home Rule in Texas

The City of Austin is a Home Rule city, a classification authorized by Texas Constitution article 11, section 7 (the "Home Rule Amendment), which has been in place since 1910. Home Rule cities operate under a local charter, granting them

broad self-governance authority. Unlike general law cities, which may only exercise powers explicitly granted by the State, Home Rule cities have the freedom to legislate on any matter unless it is expressly prohibited by state law. *See* Tex. Local Gov't Code § 51.072 ("The municipality has full power of local self-government.").

As of 2010, 390 Texas cities have adopted Home Rule charters, managing their local affairs independently of the State's direct oversight. Texas Home Rule Charters – Second Edition (2010), Texas Municipal League. There are 350 Home Rule cities with populations under 100,000, cities that exemplify the small government philosophy that Texas politicians so often champion.

## B. The Right to Initiative Elections

The initiative and referendum process is a cornerstone of Home Rule governance, allowing citizens to directly propose and vote on ordinances when their elected representatives fail to act. The Texas Election Code and Charters of Home Rule cities outline the general legal framework for initiative elections, ensuring that local residents retain legislative power in municipal matters.

The State contends that the referendum process used by Austin's citizens was unlawful, citing *In re Morris*, 663 S.W.3d 589, 596 (Tex. 2023). However, the Texas Supreme Court's ruling in *Morris* does not support the State's argument. The relevant passage states:

"The right to call and hold a void election is a political right that the courts have no jurisdiction to interfere with, but the right to enforce a void election in such a way as to violate the laws of this state would present a matter that the judicial power of the government would have the right to give relief from." Id. (quoting *City of Austin v. Thompson*, 219 S.W.2d 57, 60 (Tex. 1949)).

While the Legislature has authority to preempt local laws under *Glass v. Smith*, 244 S.W.2d 645, 649 (Tex. 1951), the issue remains: when can the State preempt a voter-approved ordinance that merely documents the community's wishes for how scarce public safely resources should be allocated?

The Court has repeatedly affirmed the fundamental principle that initiative powers belong to the people, not the government:

"The power of initiative is the exercise by the people of a power reserved to them, and not the exercise of a right granted." *In re Morris*, 663 S.W.3d at 595.

The Court further held:
"Petition signers, being otherwise entitled to have the initiative election called and held, cannot be defeated in that right by the refusal of the city council to perform purely ministerial duties on the ground that in their opinion the ordinance would be invalid if adopted." *Id*.

The Austin City Charter (Article 4, Section 5) states:
"If a majority of the votes cast is in favor of a submitted ordinance, it shall thereupon be effective as an ordinance of the city."

Austin's ordinance was not the result of discretionary city government action—it was directly enacted by 85 percent of Austin's voters. The City Council had no

authority to reject the measure post-election, nor could it disregard the ministerial function of codifying it into the municipal record. The State's argument that Austin's enactment of the ordinance was an unlawful exercise of discretion is a fundamental misinterpretation of municipal governance.

## IV.     The Broader Question: When Can the State Preempt Citizens?

If the State is right, what prevents the State from mandating how localities enforce laws, prioritize cases, or allocate law enforcement budgets?

At its core, this case presents a serious home rule question:

• Can the State of Texas override a duly enacted ordinance that does not directly contradict state law but instead reflects local enforcement priorities?

• If so, does this set a precedent for the State to dictate law enforcement and prosecutorial discretion at the municipal level?

By attempting to invalidate Austin's ordinance, the State is not merely regulating local governance—it is commandeering municipal discretion, stripping cities of their right to self-govern in areas where state law is silent on enforcement priorities. Such an overreach is inconsistent with the principles of Home Rule governance and undermines the democratic process at the local level.

## V.     The Bastrop Letter.

We note the Appellant's recent transmittal to the court of a letter recounting that the City of Bastrop City Council declined to pass a misdemeanor marijuana

15

ordinance similar to the Austin measure at issue in this case. That letter omits a salient point, one openly reported in the press: "Bastrop Mayor Pro Tem John Kirkland said the city estimates it would cost $400,000 in legal fees to fight lawsuits if the city adopted the charter amendment." Aaron Sullivan, *Bastrop City Council denies marijuana decriminalization amendment despite voter approval*, AUSTIN AMERICAN STATESMAN, Jan. 30, 2025, https://www.msn.com/en-us/news/us/bastrop-city-council-denies-marijuana-decriminalization-amendment-despite-voter-approval/ar-AA1y7r3S?ocid=BingNewsSerp.

We submit for the court's consideration that the prospect of burdening 11,700 Bastrop constituents with $400,000 in litigation costs is a better explanation for the "no" vote on Proposition M--during a meeting at which the Council adopted ten of eleven voter-approved propositions--than any serious evaluation of the legal elements involved.

## PRAYER

For the reasons set forth herein, the International Municipal Lawyers Association prays that this Court affirm the District Court's order denying the State's Application for Temporary Injunction and granting the City of Austin's Plea to the Jurisdiction.

Respectfully submitted,

*/s/ William M. "Mick" McKamie*

_____
William M. "Mick" McKamie
Texas Bar No. 13686800
Email: mmckamie@toase.com

Bessie Bronstein
Texas Bar No. 24118304
Email: bbronstein@toase.com

TAYLOR, OLSON, ADKINS, SRALLA
   & ELAM, LLP
6000 Western Place, Suite 200
Fort Worth, TX 76107
**COUNSEL FOR AMICUS CURIAE**

## CERTIFICATE OF SERVICE

I certify that on February 10, 2025, true and correct copies of this brief were served via electronic service through eFile.TXCourts.gov on all parties through counsel of record.

*/s/ William M. "Mick" McKamie*

_____
William M. "Mick" McKamie

## CERTIFICATE OF COMPLIANCE

Based on a word count run in Microsoft Word, this brief contains 2,287 words, excluding the portions of the brief exempt from the word count under Texas Rule of Appellate Procedure 9.4(i)(1).

*/s/ William M. "Mick" McKamie*

_____
William M. "Mick" McKamie

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Rebecca Meek on behalf of William McKamie
Bar No. 13686800
rmeek@toase.com
Envelope ID: 97196735
Filing Code Description: Other Brief
Filing Description: Amicus Brief of International Municipal Lawyers Association
Status as of 2/10/2025 4:07 PM CST

Associated Case Party: The State of Texas

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Nancy Villarreal | | nancy.villarreal@oag.texas.gov | 2/10/2025 3:56:34 PM | SENT |
| Cory Scanlon | | cory.scanlon@oag.texas.gov | 2/10/2025 3:56:34 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Briana Nicholson | | briana.nicholson@austintexas.gov | 2/10/2025 3:56:34 PM | SENT |
| Anne Morgan | 14432400 | morgananne62@aol.com | 2/10/2025 3:56:34 PM | SENT |
| Meghan Riley | 24049373 | mriley@earthjustice.org | 2/10/2025 3:56:34 PM | SENT |
| Sara Schaefer | 24086598 | sara.schaefer@austintexas.gov | 2/10/2025 3:56:34 PM | SENT |
| Brandon Mickle | 24123140 | Brandon.mickle@oag.texas.gov | 2/10/2025 3:56:34 PM | SENT |
| Hannah Vahl | | hannah.vahl@austintexas.gov | 2/10/2025 3:56:34 PM | SENT |
| Jessica Martinez | | jessica.martinez4@austintexas.gov | 2/10/2025 3:56:34 PM | SENT |