69 P.(2d) 931

**STATE v. PATTEN et al.**
No. 4152.

Supreme Court of New Mexico.

June 21, 1937.

G. L. Reese, Jr., of Carlsbad, and O. O. Askren and Neil B. Watson, both of Roswell, for the State.

· W. H. Patten, of Hobbs, and Tom W. Neal, of Lovington, for appellees.

ZINN, Justice.

From an order of the district court of the Fifth judicial district for the county of Lea, sustaining a demurrer to an information for contempt, this appeal is prosecuted.

On March 22, 1935, the district court of Lea county entered a final decree in cause No. 2212 enjoining the holding of an election in the town of Hobbs, N. M., called for the purpose of determining whether the citizens desired to change the existing town form of municipal government to the so-called commission form of municipal government in the manner provided by Comp.St.1929, c. 90, art. 38. The plaintiffs in cause No. 2212 were residents, taxpayers, and voters within the corporate limits of the municipality of Hobbs.

The injunction suit was predicated on the theory that all of the proceedings preliminary to the election and the proposed election itself would be void. Many reasons were set forth by the plaintiffs in cause No. 2212 which they claimed would make the proposed election void. The plaintiffs therein also alleged that the election was called to deprive the trustees of the town of Hobbs of their offices as such trustees.

The information in the instant case charges that immediately after the rendition of said injunction decree, the defendants in this cause (appellees here) entered into a plan to defeat the terms of the final decree by various means, though having full knowledge of the terms and conditions of the final decree, and proceeded to execute the plan and conducted a purported election. The information for contempt concludes with the allegations that each and all of the acts of the appellees were done in flagrant disrespect of the court and constituted an unwarrantable interference with the orderly and effective administration of justice and prayed that each of the appellees should be adjudged in contempt of court by reason thereof.

To this information for contempt the appellees demurred. The demurrer is based on the theory that the information in contempt does not state any cause of action against appellees for the reason that a court of equity is without jurisdiction to enjoin an election which does not involve any property rights but pertains solely to the political administration of government. It is the appellees' theory that the whole proceeding in cause No. 2212, out of which the information for contempt was issued, was void and of no force and effect. In other words, it is the claim of the appellees that if the district court had no jurisdiction to enter the original decree enjoining the conducting of the election, such decree was void, and being void—that is that there was an absolute lack of power to issue such decree—then there is no contempt in disobeying the order of the court, because the order and process of the court was void. In re Sloan, 5 N.M. 590, 25 P. 930; Ex parte Barrett, 120 Tex. 311, 37 S.W.(2d) 741; 6 R.C.L. 505.

On the general proposition of the power of a court of chancery to enjoin the holding of an election, much has been written and said by the text-writers and by courts of other jurisdictions. Notes, 33 A.L.R. 1376, 70 A.L.R. 733, and cases therein cited. (See, also, later cases 1936 Revision of A.L.R. Blue Book of Supplemental Decisions, p. 472, under 70 A.L.R. 733.) From a reading of many cases, we find that the authorities are divided on the proposition of whether courts of chancery ought to interfere by injunction to prevent the calling or holding of an election.

We believe that in New Mexico a court of equity ought to interfere if property or personal rights are affected when the suit is brought by a proper party. R.C.L. 988; City of Murray et al. v. Irvan et al., 170 Ky. 290, 185 S.W. 859; Crampton v. Zabriskie, 101 U.S. 601, 609, 25 L.Ed. 1070. We believe such a rule in this jurisdiction is sound. It may be that in jurisdictions where the distinction still exists between courts of equity and law it is a sound theory, that in the organization of courts of equity and the machinery for the exercise of the powers of such courts, that the chancellor is better circumstanced to try and determine questions of property and maintenance of civil rights and that law courts are better circumstanced for the determination of questions which might involve political or quasi political rights. We do not question the historical logic of such a rule.

However, N.M.Comp.St.1929, § 105-101, provides: "There shall be in this state but one form of action for the enforcement or protection of private rights, and the redress or prevention of private wrongs." We are aware that we have said that this Code has not assumed to abolish the distinctions between law and equity considered as two complementary departments of our system of jurisprudence, nor to substitute any primary rights, duties, or liabilities for those imposed in either department of the law. Yet, where the

same judge is to be both chancellor and also the presiding judge in the law court and the judge having the power under the Code to administer both legal and equitable relief, it seems rather absurd to say that there may not be a case so plain that where election officials are about to hold an election which when held would be absolutely void and carrying in its wake such results as waste of public funds, inconvenience to public officials and the citizenry in general, and yet say that the chancellor, being convinced that something futile, accompanied by waste of funds, could not stop such futility. It seems absurd to say that he as chancellor would have to wait until after the event, and then as the presiding judge of the law court undo the results of the evil as far as he could. It is apparent that he could not completely undo the results of the futile election because the money would have been spent and the inconvenience have been incurred and no way to get the money back or to restore the status quo of those who had been inconvenienced and possibly damaged.

Viewing the subject-matter as we do, we arrive at the conclusion that our courts in certain cases have the power to issue injunctions to restrain the conducting of an election wherein the personal or property rights of the complainant are involved. Upon a proper showing by proper parties plaintiff (Asplund v. Hannett, 31 N.M. 641, 249 P. 1074, 58 A.L.R. 573) the court does not have to wait until after the election, and then undo that evil which it could have prevented by its injunction. The proper showing, however, must be determined from the facts in each individual case. It necessarily follows that the district courts of New Mexico have jurisdiction over the subject matter, to wit, the enjoining of illegal elections.

This being true, it becomes totally unnecessary to decide whether the trial court in cause No. 2212 decided the proposition presented to it erroneously. We are confronted with an entirely different question of law. The proposition is whether or not the court in cause No. 2212, having jurisdiction of the parties and the subject-matter generally, was so devoid of jurisdiction of the particular subject-matter to an extent that its judgment was totally void.

We stated in In re Field's Estate, 40 N.M. 423, 60 P.(2d) 945, 947: "There are three jurisdictional essentials necessary to the validity of every judgment, to wit, jurisdiction of parties, jurisdiction of the subject matter, and *power or authority to decide the particular matters presented,* Protest of Gulf Pipe Line Company, 168 Okl. 136, 32 P.(2d) 42; Windsor v. McVeigh, 93 U.S. 274, 23 L.Ed. 914, and the lack of either is fatal to the judgment, Reynolds et al. v. Stockton, 140 U.S. 254, 11 S.Ct. 773, 35 L.Ed. 464." (Italics ours.)

Each of three elements necessary to confer jurisdiction, that is, subject-matter generally, parties, and power or au-

thority to decide must be present to make a decree or judgment of a court of competent jurisdiction valid and binding so that such judgment or decree cannot be subject to collateral attack.

█ The test of the jurisdiction of a court is whether or not it had *power to enter upon the inquiry;* not whether its conclusion in the course of it was right or wrong. Board of Com'rs of Lake County v. Platt, 79 F. 567, 25 C.C.A. 87.

"* * * the right to adjudicate concerning the subject-matter in the given case. To constitute this there are three essentials: First, the court must have cognizance of the class of cases to which the one to be adjudged belongs; second, the proper parties must be present; and, third, the ·point decided must be, in substance and effect, within the issue." Reynolds v. Stockton, 140 U.S. 254, 268, 11 S.Ct. 773, 777, 35 L.Ed. 464.

█ A clear distinction must be made between "Jurisdiction" and "Exercise of Jurisdiction." The authority to decide a cause at all, and not the decision rendered therein, is what makes up jurisdiction; and when there is jurisdiction of the person and subject-matter, the decision of all other questions arising in the case is but an exercise of that jurisdiction. In order that jurisdiction may be exercised, there must be a case legally before the court, and a hearing, as well as a determination. 15 C.J. 729.

█ Every presumption not inconsistent with the record is to be indulged in favor of the jurisdiction of courts having unlimited jurisdiction, and their judgments, however erroneous, cannot be questioned when attacked collaterally, unless it be shown affirmatively that they had no jurisdiction of the case. Kempe v. Kennedy, 5 Cranch, 173, 3 L.Ed. 70; Voorhees v. Jackson ex dem. Bank of U. S., 10 Pet. 449, 9 L.Ed. 490; Ex parte Watkins, 3 Pet. 193, 7 L.Ed. 650; Grignon v. Astor, 2 How. 319, 11 L.Ed. 283; Harvey v. Tyler, 2 Wall. 328, 17 L.Ed. 871, 873.

We quote from a South Dakota decision: "It is true that jurisdiction is said to depend upon various things—for instance, upon service of process, and that the subject-matter must be one upon which the court is given authority to exercise judicial authority. But these various things upon which jurisdiction may depend do not in themselves constitute 'jurisdiction.' When parties are before the court and present to it a controversy which the court has authority to decide, a decision not necessarily correct, but appropriate to that question, is a proper exercise of judicial power or jurisdiction. So far as the jurisdiction itself is concerned, it is wholly immaterial whether the decision upon the particular question be correct or incorrect. Were it held that a court had 'jurisdiction' to render only correct decisions, then, each time it made an erroneous ruling or decision, the court would be without jurisdiction, and the ruling itself void. Such is not the law,

and it matters not what may be the particular question presented for adjudication, whether it relate to the jurisdiction of the court itself, or affects substantive rights of the parties litigating; it cannot be held that the ruling or decision itself is without jurisdiction, or is beyond the jurisdiction of the court. The decision may be erroneous, but it cannot be held to be void for want of jurisdiction." Calhoun v. Bryant, 28 S.D. 266, 271, 133 N.W. 266, 269.

In State of Rhode Island v. State of Massachusetts, 12 Pet. 657, 717, 9 L.Ed. 1233, Mr. Justice Baldwin, delivering the opinion of the majority of the Supreme Court of the United States, said: "Jurisdiction is the power to hear and determine the subject-matter in controversy between parties to a suit, to adjudicate or exercise any judicial power over them; the question is, whether on the case before a court, their action is judicial or extra-judicial; with or without the authority of law, to render a judgment or decree upon the rights of the litigant parties. If the law confers the power to render a judgment or decree, then the court has jurisdiction; what shall be adjudged or decreed between the parties, and with which is the right of the case, is judicial action, by hearing and determining it."

As was said in People v. Sturtevant, 9 N.Y. 263, 59 Am.Dec. 536: "Jurisdiction does not relate to the right of the parties, as between each other, but to the power of the court. The question of its existence is an abstract inquiry, not involving the existence of an equity to be enforced, nor the right of plaintiff to avail himself of it if it exists. It precedes these questions, and a decision upholding the jurisdiction of the court is entirely consistent with a denial of any equity, either in the plaintiff or in any one else. The case we are considering illustrates the distinction I am endeavoring to point out, as well as any supposed case would. It presents these questions: Have the plaintiffs shown a right to the relief which they seek? and has the court authority to determine whether or not they have shown such a right? A wrong determination of the question first stated is error, but can be reëxamined only on appeal. The other question is the question of jurisdiction. It is that alone with which we now have anything to do. Whether the plaintiffs are the proper persons to maintain the suit, or whether the attorney-general should have brought it, or whether the facts show a right in either to have a decree in their favor, are questions which we are not in this proceeding called upon to consider. They relate to the equity of the claim, and not to the power of the court. We are entirely satisfied that the decree of a court of equity restraining a public nuisance is not void, even though the attorney-general be not plaintiff, and though no special injury to the actual plaintiff is averred. It is quite possible that such a decree would be erroneous, perhaps even very clearly wrong, but it would not be void;

and the party who was dissatisfied with it would be compelled to seek his remedy by an appeal, and not by setting at defiance the authority of the court."

The above-quoted statements of the law point to the true line of inquiry to determine the question of jurisdiction. We are not called upon to say whether the court decided right or not in granting the injunction, but whether it became the duty of the court to decide either that it should be granted or denied. If such was its duty, then it had jurisdiction, and its decision, be it correct or erroneous, is the law of the case until it shall be reversed upon appeal; and can only be questioned upon a direct proceeding to review it, and not collaterally.

In cause No. 2212, the court had jurisdiction, as a court of equity, to enjoin the holding of an improper election. Whether the personal or property rights of the plaintiffs in said cause were in jeopardy, we need not now concern ourselves. Whether the complaint in cause No. 2212 stated facts sufficient to constitute a cause of action likewise does not concern us at this time.

We held in Acequia Del Llano v. Acequia De Las, etc., 25 N.M. 134, 179 P. 235, also in the Field's Case, that if the court had jurisdiction of the persons and subject-matter and of the particular matter sued on that the judgment entered is not void merely because the complaint failed to state facts constituting a cause of action.

If the court ruled erroneously, it was nevertheless a judgment, and until reversed, such judgment cannot be disregarded.

Our district courts are courts of general jurisdiction. The defendants were properly in court. The court rendered judgment. Here we find all the usual accompaniments of a judicial proceeding, to wit, a court of competent jurisdiction, parties, plaintiffs and defendants, a subject-matter of consideration, and a judgment of the court, restraining the election. No appeal was taken. The judgment was conclusive against collateral attack.

The record does not have to show that every fact was proved upon which the judgment of the court must be supposed to rest. Upon a review of the matter on appeal in cause No. 2212 we may not have agreed with the trial court. We might have said that the parties ought not to have been permitted to bring the suit; that the facts pleaded in cause No. 2212 did not show that the plaintiffs were being injured in their personal or property rights, and that the claimed damage was imaginary and only speculative, and if such damage occurred, the same could be subsequently corrected in a law court. Nevertheless the trial court may have had facts before it contrary to this view and which are not before us now.

The plaintiffs in cause No. 2212 may have been in the same position as the plaintiffs were in a case recently before

this court. In the case of Tadlock v. Smith, 38 N.M. 288, 31 P.(2d) 708, 709, we said:

"What interest has the plaintiff to qualify him as a suitor?

"If one's own right to an office is not such a right as equity recognizes (Guadalupe County Commissioners v. Anaya [31 N.M. 182, 242 P. 335], supra), the right of a third person certainly cannot be subject-matter of a suit. The plaintiff can have no higher standing here than as a volunteer interested in seeing that the village of Santa Rosa shall conduct its election according to law. If a threatened violation of the Constitution does not, of itself, afford a cause of action to the citizen (Asplund v. Hannett, 31 N.M. 641, 249 P. 1074, 58 A.L.R. 573), how can a violation of statute afford one. No civil or property right of the plaintiff is here threatened with irreparable, or any, injury. His right to vote is not endangered. Of course, usurpation of power will always affect the citizen with a sense of outrage, but unless it affects his civil or property rights, his remedy is political, not legal. Courts of equity are not constituted as guardians of the affairs of municipalities. We cannot assume to take charge of their election proceedings. We can only decide justiciable questions as they come to us. These principles were fully discussed in Asplund v. Hannett, supra. Without abandoning them, we cannot entertain the present complaint."

However, having failed to appeal from the original decree awarding an injunction in cause No. 2212, the same cannot now be attacked. The appellees, having disobeyed the injunction, cannot now claim that the injunction decree was erroneous. The judgment of a court having jurisdiction is to be obeyed, no matter how clearly it may be merely erroneous. The method of correcting error is by appeal, and not by disobedience. A party proceeded against for disobedience to an order or judgment is never allowed to allege as a defense for his misconduct that the court erred in its judgment. He must go further, and make out that in point of law there was no order and no disobedience by showing that the court had no right to judge between the parties upon the subject. The point has been held over and over again in reference to the very case of disobedience to injunctions. This proposition is well stated in general terms in Wilcox v. Jackson, 13 Pet. 498, 511, 10 L.Ed. 264: " 'Where a court has jurisdiction, it has a right to decide every question which occurs in the cause; and whether its decision be correct or otherwise, its judgment, until reversed, is regarded as binding in every other court. But if it act without authority, its judgments and orders are regarded as nullities; they are not voidable, but simply void.' " The appellees in the instant case, admitting by their demurrer that they violated the injunction decree rendered in cause No. 2212, are in contempt of court.

For the reasons given, the cause will be remanded, with directions to overrule the demurrer of the appellees.

It is so ordered.

HUDSPETH, C. J., and SADLER, BRICE, and BICKLEY, JJ., concur.