586 P.2d 318

**ROYAL INTERNATIONAL OPTICAL COMPANY, d/b/a Texas Optical, a Texas Corporation, Plaintiff-Appellee,**

v.

**TEXAS STATE OPTICAL COMPANY, a Texas Corporation, and Dr. N. J. Rogers, Individually and as a partner of Texas State Optical Company, a/k/a TSO, Defendants-Appellants.**

**No. 3112.**

Court of Appeals of New Mexico.

Sept. 12, 1978.

Rehearing Denied Sept. 22, 1978.

Writ of Certiorari Denied Oct. 26, 1978.

238

OPINION

SUTIN, Judge.

This is the second appeal of the defendants. The first appeal arose from a judgment that restrained defendants from using the trade name "Texas State Optical" .or any other name deceptively similar to plaintiff's trade name "Texas Optical." This judgment was affirmed by the Supreme Court in *Royal Intern'l Optical Co. v. Texas State Optical Co.*, 90 N.M. 21, 559 P.2d 398 (1976). The second appeal arises out of a judgment that awarded plaintiff damages, and, by way of contempt proceedings, an attorney fee for defendants' use of the trade name "Texas State Opticians."

Because the Opinion of this Court in the first appeal was ordered by the Supreme Court not to be published, and the opinion of the Supreme Court was perfunctory, a resume of the history of this case follows:

In the original trial, the court found that plaintiff and defendants were doing business in Albuquerque, New Mexico. Plaintiff registered to do business in April, 1971, under the trade name of "Texas Optical," and opened for business at that time. It had done business continuously under its trade name in the Albuquerque and Santa Fe trade areas. In September, 1974, defendants opened for business in competition with plaintiff, under the trade name of "Texas State Optical." "Texas Optical" and "Texas State Optical" were confusingly similar to the public within the trade areas and by reason thereof, plaintiff would likely suffer dilution of its trade name and clientele and would suffer irreparable injury to its business, trade, and business reputation.

The trial court concluded that plaintiff had the prior right to the exclusive use of the trade name "Texas Optical" in the Albuquerque and Santa Fe trade areas.

On February 26, 1975, a Judgment and Restraining Order was entered. (1975 Judgment.) Defendants were "enjoined and restrained from advertising their product or in any manner whatsoever, using the trade name Texas State Optical, *or any other name deceptively similar to plaintiff's*

William E. Snead, Ortega & Snead, Albuquerque, Sumner G. Buell, Jasper & Buell, Santa Fe, Robert Q. Keith, Mehaffy, Weber, Keith & Gonsoulin, Beaumont, Tex., for defendants-appellants.

E. Douglas Latimer, E. Douglas Latimer, P. A., Charles C. Spann, Charles C. Spann, P. A., Albuquerque, for plaintiff-appellee.

*trade name Texas Optical . . . ."* [Emphasis added.]

Defendants appealed the 1975 Judgment to this Court. The injunction was suspended during this appeal.

The unpublished majority opinion of this Court, Judge Sutin dissenting, reversed the judgment rendered in the trial court.

By way of certiorari, the Supreme Court in *Royal, supra,* reversed the opinion of this Court in the following language.

There being substantial evidence to support the judgment of the trial court, its decision is affirmed.

Thereafter, the trial court entered Judgment On Mandate. The 1975 Judgment was affirmed. The order suspending the injunction had expired and was no longer in force, and the court retained jurisdiction to determine the amount of damages sustained by plaintiff and to grant judgment accordingly.

Without seeking the guidance of the court, defendants began to use the trade name "Texas State Opticians" in place of "Texas State Optical," and a second action arose in the same court. Plaintiff moved the court to hold defendants in contempt for use of the trade name "Texas State Opticians" because it was deceptively similar to plaintiff's trade name and in violation of the 1975 Judgment. Three hearings were held on the issues of contempt and damages.

At the end of the last hearing held on March 31, 1977, the trial court orally ordered defendants to be in contempt. Defendants were fined $5,000.00, suspended if defendants would, within 30 days, stop the use of the trade name "Texas State Opticians." On April 13, 1977, defendant filed a Certificate of Compliance and changed its trade name to "TSO Opticians."

Thereafter, the trial court entered its findings that the trade name "Texas State Opticians" was deceptively similar to the name "Texas Optical"; that the defendant's had been found in contempt of court for a willful violation of the plain wording of the Court Mandate and were fined $5,000.00;

that the fine was suspended pending compliance with the court's Order; and that plaintiff suffered damages in the total sum of $4,175.00.

Judgment was entered accordingly, and, in addition thereto, plaintiff was awarded an attorney fee of $2,500.00 "incurred in bringing the proceedings to enforce the Court's Order."

Defendants appeal. We affirm.

Defendants raise three points on appeal:

(1) The injunction in the 1975 Judgment is vague, overbroad and not sufficiently definite to support a judgment of contempt for using a trade name said to be "deceptively similar" to the name "Texas Optical."

(2) The name "Texas State Opticians" is not deceptively similar to the name "Texas Optical" as a matter of law.

(3) Any damage award or award of attorney's fees is not supported by substantial evidence and was unlawful.

## A. *Defendants are barred from attacking the 1975 Judgment.*

Plaintiff moved the court for an order requiring defendants to show cause why they should not be held in contempt of court for continued use of the trade name "Texas State Opticians," in violation of the 1975 Judgment, a name deceptively similar to plaintiff's trade name "Texas Optical."

By way of response, defendants attacked the validity of the following language in the 1975 Judgment:

". . . any other name deceptively similar to plaintiff's trade name Texas Optical."

The basis for the attack is the claim that the words "deceptively similar" are vague, over broad and ambiguous, insufficiently definite to support a judgment of contempt; that "there is no guidance anywhere in the trial court's judgment that would give TSO any notice as to what it is restrained from doing."

Defendants have not explained, nor given any reasons why they did not seek the guidance of the court before they adopted

the use of the trade name "Texas State Opticians." Neither have the defendants explained nor given any reasons why they did not directly attack the 1975 Judgment by motion to vacate or set aside the Judgment because of the vagueness of the language.

Plaintiff claims that defendants made a collateral attack on the judgment and this they cannot do. We agree.

■ "The general rule is that a judgment is not subject to collateral attack where the court had jurisdiction of the subject matter and of the parties . . . ." 46 Am. Jur.2d *Judgments,* § 621 (1969). " . . . [It] is not open to contradiction or impeachment, in respect of its validity, verity, or binding effect, by parties or privies, in any collateral action or proceeding, except . . for fraud in its procurement." 49 C.J.S. *Judgments* § 401 (1947).

■ However, where lack of jurisdiction affirmatively appears on the face of the judgment, the judgment is void and therefore open to collateral attack. *St. Paul Fire and Marine Insurance Co. v. Rutledge,* 68 N.M. 140, 359 P.2d 767 (1961). But where the lack of jurisdiction does not affirmatively appear on the face of the record, the judgment is not subject to collateral attack. *McDonald v. Padilla,* 53 N.M. 116, 202 P.2d 970 (1948); *Arthur v. Garcia,* 78 N.M. 381, 431 P.2d 759 (1967).

■ If defendants wanted to challenge the validity of the 1975 Judgment, it had to be done by way of a direct attack, exampled by motion to vacate or set aside the Judgment. *Barela v. Lopez,* 76 N.M. 632, 417 P.2d 441 (1966).

Beginning almost 60 years ago, in *Acequia Llano v. Acequia Las Joyas,* 25 N.M. 134, 142, 179 P. 235, 237 (1919) the Supreme Court said:

. . . The universal rule adhered to by the courts is that the judgment or final order of a court having jurisdiction of the subject matter and the parties, *however erroneous,* irregular, or informal *such judgment or order may be, is valid until reversed or set aside.* Black on Judgments, § 190. *And the general rule is that an error of law does not furnish ground for collateral attack on a judgment.* 15 R.C.L. 861. [Emphasis added.]

It was repeated in *McDonald v. Padilla, supra; In re Field's Estate,* 40 N.M. 423, 60 P.2d 945 (1936); and in *State v. Patten,* 41 N.M. 395, 69 P.2d 931 (1937).

■ *State v. Patten,* involved an injunction restraining an election. In subsequent contempt proceedings for violating the injunction, the court held that the judgment was conclusive against collateral attack. The court said:

. . . *The appellees having disobeyed the injunction, cannot now claim that the injunction decree was erroneous. The judgment of a court having jurisdiction is to be obeyed, no matter how clearly it may be merely erroneous.* The method of correcting error is by appeal, and not by disobedience. *A party proceeded against for disobedience to an order or judgment is never allowed to allege as a defense for his misconduct that the court erred in its judgment.* He must go further, and make out that in point of law there was no order and no disobedience by showing that the court had no right to judge between the parties upon the subject. [41 N.M. at 402, 69 P.2d at 935.] [Emphasis added.]

See, *State ex rel. Mix v. Newland,* 277 Or. 191, 560 P.2d 255 (1977).

Furthermore, the contempt proceeding was one undertaken to enforce the 1975 Judgment.

■ "A proceeding to enforce a judgment is collateral to the judgment, and therefore no inquiry into its regularity or validity can be permitted in such a proceeding." 49 C.J.S. *Judgments* § 409 (1947); *Pitts v. Dallas Nurseries Garden Ctr., Inc.,* 545 S.W.2d 34 (Tex.Civ.App.1976); *Travelers Ins. Co. of Hartford, Conn. v. Staiger,* 157 Or. 143, 69 P.2d 1069 (1937); *Friesen v. Friesen,* 196 Kan. 319, 410 P.2d 429 (1966).

*Pitts* was a post-judgment garnishment proceeding against State Farm Insurance

**242**

Companies as garnishees and holders of monies owed to Pitts. Pitts intervened and sought to quash the writ of garnishment because the judgment was "too vague and indefinite." The court said:

> . . . Appellant's [Pitts] questioning of the original judgment in the garnishment proceedings was a collateral attack upon the judgment and is not permitted, [citation omitted]. The original judgment does not appear to be fatally defective upon its face. . . . [545 S.W.2d at 37.]

Defendants' response is not clear. They claim that plaintiff entirely missed defendants' point. Defendants' point is that the phrase "any other name deceptively similar to plaintiff's trade name Texas Optical" was so vague and indefinite that the 1975 Judgment could not be enforced by contempt proceedings; that "a collateral attack is an attempt to impeach the judgment by matters dehors the record, in an action other than that in which it was rendered," and "that matters dehors the record were not presented to the trial court, nor are they being presented to this Court." Defendants rely on *Barela v. Lopez, supra.* Defendants misinterpret this case.

Defendants seem to dance around the doctrine of collateral attack, and attempt to pole vault to reversal without a pole.

We hold that the defendants are barred from attacking the 1975 Judgment.

B. *The name "Texas State Opticians" is deceptively similar to the name "Texas Optical."*

Defendants' second point is that "The name 'Texas State Opticians' is not deceptively similar to the name 'Texas Optical' *as a matter of law*." [Emphasis added.]

The trial court found:

3. The name "Texas State Opticians" is deceptively similar to the name "Texas Optical."

4. There has been confusion to the public by the use of the trade name Texas State Opticians by respondent and the name Texas Optical by petitioners.

Plaintiff had the exclusive use of the trade name "Texas Optical" from April 1, 1971 to June 2, 1977, the date the judgment was entered, a period of over six years.

█ There was substantial evidence to support the trial court's findings of fact, and such findings supported by substantial evidence cannot be disturbed on appeal. *Boone v. Boone,* 90 N.M. 466, 565 P.2d 337 (1977).

Defendants claim that the trade names are not deceptively similar *as a matter of law* because plaintiff did not prove that the word "Texas" had acquired a "secondary meaning," and the trial court made no such finding; that in the absence of a specific finding that the word "Texas" had acquired a "secondary meaning," defendants were free to use the trade name "Texas State Opticians."

Defendants acquired their "secondary meaning" theory from the trade mark case of *G. & C. Merriam Co. v. Saalfield,* 198 F. 369 (6th Cir. 1912), a case followed generally in the United States. With reference to "secondary meaning," the court said:

> . . . It contemplates that a word or phrase originally, and in that sense primarily, incapable of exclusive appropriation with reference to an article on the market, *because geographically* or otherwise descriptive, *might nevertheless have been used so long and so exclusively* by one producer with reference to his article *that, in that trade and to that branch of the purchasing public, the word or phrase had come to mean that the article was his product*; in other words, had come to be, to them, his trade-mark. *So it was said that the word had come to have secondary meaning* . . . . [Emphasis added.] [198 F. at 373.]

If we understand defendants' position correctly, the failure to specifically find that the word "Texas" has a geographical descriptive word in plaintiff's trade name meant "Texas" to the trade and to the public, then the trade names were not deceptively similar as a matter of law.

The "secondary meaning" theory was not raised in the district court.

■ Defendants did not point to any place in the contempt proceedings where this "secondary meaning" theory was mentioned or presented. The record shows that defendants made no reference to any duty of plaintiff to shoulder this burden as a condition precedent to recovery or to any such defense stated in their response to plaintiff's motion, or to any evidence on the subject or to any requested finding by defendants on this issue. It came to plaintiff and to this Court like a comet out of the sky, and like the comet, plaintiff's attack disappears from view. "It is fundamental that matters not brought into issue by the pleadings and upon which no decision of the trial court was sought, or fairly invoked, cannot be raised on appeal." *Groendyke Transp., Inc. v. New Mexico St. Corp. Com'n,* 85 N.M. 718, 723, 516 P.2d 689, 694 (1973).

We note that at the 1975 trial defendants submitted a finding of fact and conclusion of law that the trade name "Texas State Optical" had acquired a secondary meaning and that defendants were entitled to protection as a common law trade name. Defendants' position lay at rest there. It was not revived.

■■ It has long been the rule that a final judgment is conclusive as to a claim in controversy between the parties as to every matter which was offered to sustain or defeat the claim. "Public policy requires that there be an end to litigation and that rights once established by a final judgment shall not again be litigated in any subsequent proceeding." *Ealy v. McGahen,* 37 N.M. 246, 251, 21 P.2d 84, 87 (1933). This rule of law has been consistently followed. *Board of County Com'rs of Quay County v. Wasson,* 37 N.M. 503, 24 P.2d 1098 (1933); *Miller v. Miller,* 83 N.M. 230, 490 P.2d 672 (1971). The right and the power of plaintiff to recover against defendants was established in the 1975 trial. It is too late in the day for defendants in a contempt proceeding to attempt to defeat plaintiff's claim for failure to establish a "secondary meaning" of the word "Texas."

■ If we assumed that the contempt proceeding was a different cause or demand, defendants are estopped by judgment or collateral estoppel. The judgment in the prior action operated as an estoppel as to those matters which were actually litigated and determined in the first proceeding. Once a party has fought a matter in litigation he cannot later renew that duel. *State v. Nagel,* 87 N.M. 434, 535 P.2d 641 (1975); *Atencio v. Vigil,* 86 N.M. 181, 521 P.2d 646 (1974); *State v. Tijerina,* 86 N.M. 31, 519 P.2d 127 (1973); *Town of Atrisco v. Monohan,* 56 N.M. 70, 240 P.2d 216 (1952). The "secondary meaning" theory was decided in the 1975 Judgment. Defendants' second attempt to defeat plaintiff's claim is thwarted.

■ Finally, when the Supreme Court in *Royal Intern'l Optical Co., supra,* affirmed the judgment of the trial court, the "law of the case" doctrine became effective. It established the right and power of plaintiff to further prosecute its claim against defendants irrespective of the "secondary meaning" concept. The law of the case, whether right or wrong, is controlling on the second appeal. This doctrine applies to questions which might have been, but were not, raised or presented in the prior appeal. *Sanchez v. Torres,* 38 N.M. 556, 37 P.2d 805 (1934); *Davisson v. Bank,* 16 N.M. 689, 120 P. 304 (1911). It also applies to those questions which are necessarily involved in reaching the decision. *Fmrs.' S. Bank of Texhoma v. Clayton N. Bk.,* 31 N.M. 344, 245 P. 543 (1926); *United States v. D. & R. G. Railroad,* 11 N.M. 145, 66 P. 550 (1901).

We affirm the finding of the trial court that the name "Texas State Opticians" is deceptively similar to the name "Texas Optical."

C. *The damage award was supported by substantial evidence.*

The trial court found:

7. The issue was presented to the Court by agreement of the parties as to any damages that might have been suffered by petitioners by respondents use of

the trade name "Texas State Optical" during the pendency of the appeal in this matter between the entry of the original order of the Court on February 26, 1975, and the final order of September 15, 1976.

8. The Court has found the petitioners have suffered damages in the amount of $2,750.00 to the East Central Store and $1,425.00 damages to the Five Points Store for a total judgment of $4,175.00.

At the close of the case, the court orally announced:

As everybody's mentioned here, the calculation of damages is indeed difficult, that there is no precise way of calculating damages. The evidence that has been presented to the Court in certain instances is rather sophomoric and rather elemental, and perhaps even the way that this Court will calculate damages admittedly is not precise but I think the cases hold the difficulty of calculating damages is no way a bar to the—to the awarding of damages if there is some basis in the proof, the evidence before the Court.

We're talking about a 19 month period and we've talked about 30-day months, that's approximately 570 days, 570 business days, probably less than that and . . . it would appear to the Court that two stores particularly have been shown to me to have suffered some loss.

\* \* \* \* \* \*

I think a fair measure would be $5.00 a day, and the Court is going to award damages of $2,750.00 on the East Central Store and half that amount on the Five Points store of $1,425.00, for a total of $4,175.00.

Whether we agree or disagree, we compliment a district judge who lays his/her cards on the table for guidelines of attorneys and appellate courts. It is important that we know the basis upon which the trial court reaches its decision. "It is hornbook law that the decision of a trial court will be upheld if it is right for any reason." *Scott v. Murphy Corporation,* 79 N.M. 697, 700, 448 P.2d 803, 806 (1968).

While damages must be susceptible of ascertainment otherwise than by mere speculation, conjecture, or surmise, it is now generally held that uncertainty which prevents a recovery is uncertainty as to the fact of the damage, and not as to the amount; and that where it is certain that damage has resulted mere uncertainty as to the amount will not preclude the right to recovery. *J. R. Watkins Co. v. Eaker,* 56 N.M. 385, 244 P.2d 540 (1952); *Nichols v. Anderson,* 43 N.M. 296, 92 P.2d 781 (1939).

█ Defendants committed a willful violation of the order of the 1975 Judgment and were held in contempt. We deem this such a case of wrongdoing that sound policy requires that the risk involved in the estimation of damages by the district court should be a burden of the defendants. We decline to quibble over the question of whether the exact damages have been clearly established. We experience no misgiving in sustaining the findings of the trial court under circumstances like those here present, where willful conduct and contempt are established. *Stewart v. Potter,* 44 N.M. 460, 104 P.2d 736 (1940). To view the vexatious difficulty in ascertaining damages in an injunction proceeding see *Gonzales v. Rivera,* 37 N.M. 562, 25 P.2d 802 (1933). For an extensive review of damages for misuse of a trade secret, see *DeVries v. Starr,* 393 F.2d 9 (10th Cir. 1968).

4 Callmann, *Unfair Competition Trademarks and Monopolies* (3d Ed. 1970). Section 89.1(a), pp. 247–248 says:

"Damages" as a term of art has acquired a clear and definite legal meaning; it is limited to the actual pecuniary loss sustained by the plaintiff. Whether the damage results from infringement in the strict sense of the patent or trademark law or from unfair competition, it can seldom be measured with any assurance of mathematical accuracy. Sometimes, the plaintiff's claim of damages is judicially characterized as an attempt to seek unjust enrichment at the defendant's expense. The difficulty besetting any showing of damages to intangible values and the radial repercussions of a competi-

tive injury can hardly be over-estimated. The competitive tort does not differ from other torts and a wrongdoer should answer for all the consequences naturally resulting from his wrongful act, whether anticipated or contemplated. Recoverable damages, therefore, include compensation for all injury to a plaintiff's business naturally and proximately caused by the defendant's tortious act. This includes injury to reputation or goodwill, loss of business, additional expenses incurred because of the tort, such as change of name, and all other elements of injury to the business.

We hold that the trial court's finding on damages was a fair determination of the loss suffered by plaintiff.

**D.** *Plaintiff was entitled to an attorney fee.*

 Defendants decry the award of attorney fees to plaintiff. We disagree. "An injunction while it is in force must be obeyed in order to preserve respect for and obedience to the mandates of the court. Any other approach would be intolerable." *Thomas v. Wollen,* 255 Ind. 612, 266 N.E.2d 20, 22 (1971); *State ex rel. Mix, supra.* In civil contempt, "the punishment is remedial and designed to reimburse complainants for the wrong done as a result of the noncompliance with a valid order of the court." *Nelson v. Progressive Realty Corp.,* 81 R.I.

445, 104 A.2d 241, 243 (1954). Reimbursement includes attorney fees. In the prosecution of the contempt proceedings the trial court in its discretion may allow the complainant a reasonable attorney's fee to be assessed against the violator as a part of the expenses and costs incurred by the complainant. *R. E. Harrington v. Frick,* 446 S.W.2d 845 (Mo.App. 1969), 43 A.L.R.3d 787 (1972); *Folk v. Wallace Business Forms, Inc.,* 394 F.2d 240 (4th Cir. 1968); *Chas. Pfizer & Co. v. Davis-Edwards Pharmacal Corp.,* 385 F.2d 533 (2d Cir. 1967); *Lyon v. Bloomfield,* 355 Mass. 738, 247 N.E.2d 555 (1969); *Novo Industrial Corp. v. Nissen,* 30 Wis.2d 123, 140 N.W.2d 280 (1966); *Lewis v. Lorenz,* 144 Colo. 23, 354 P.2d 1008 (1960). See, *Costilla Co. v. Allen,* 15 N.M. 528, 110 P. 847 (1910).

Plaintiff was entitled to an award of $2,500.00 as an attorney fee for successfully pursuing the contempt proceeding.

Affirmed.

IT IS SO ORDERED.

HERNANDEZ and LOPEZ, JJ., concur.