598 P.2d 1170

**Tom SANCHEZ, Jr., Plaintiff-Appellant**

**v.**

**ATTORNEY GENERAL (for Judge Caldwell), Defendant-Appellee.**

**No. 3963.**

Court of Appeals of New Mexico.

June 26, 1979.

James L. Brandenburg, Albuquerque, for plaintiff-appellant.

Jeff Bingaman, Atty. Gen., Suzanne Tanner, Asst. Atty. Gen., Santa Fe, for defendant-appellee.

## OPINION

WOOD, Chief Judge.

Does a district court have authority to compel handwriting exemplars from a person who has not been charged with a crime, has not been arrested and has not been directed to appear before an investigative agency pursuant to statutory authority? In answering this question in the negative, we (1) outline concepts on which our answer is not based, and (2) discuss the authority of a district court.

An investigator for the Attorney General filed a document in district court entitled affidavit and motion for order for handwriting exemplars. This document recited that: 1. Nineteen false Medicaid claims have been located. 2. These claims involve medications which were neither prescribed by the attending physician nor received by the patient. 3. All of the claims were submitted from Ruppe Drug Store. 4. A pharmacist intern at the drug store, Polito Martinez, admits signing 18 of the 19 false claims. 5. Martinez states that he "had no control over inventory, business records or money" at the drug store. 6. Martinez states he "often processed and signed a number of Medicaid claims although he did not himself prepare the claim and dispense the medication." 7. The State paid the false claims. 8. The claims were paid to the drug store. 9. Any benefit from submitting the false claims inured to the owner of the pharmacy. 10. Tom Sanchez, Jr. was either the sole or part owner of the drug store. 11. Sanchez was responsible for the pharmacy operation in the drug store. 12. Sanchez has refused the request of the Attorney General to voluntarily provide handwriting exemplars.

Judge Maloney issued an ex parte order directing Sanchez to provide exemplars. Sanchez refused to comply with the order within the specified time. After a hearing before Judge Caldwell on the Attorney General's motion that Sanchez be held in contempt, Judge Caldwell ruled that Sanchez had not been properly served with Judge Maloney's order. Judge Caldwell also ruled that 1) the investigator's affida-

vit set forth "sufficient probable cause" to support an order for compelled exemplars, 2) such an order was proper under the Rules of Criminal Procedure and "applicable case law," and 3) Sanchez was to provide the exemplars within ten days.

Judge Caldwell orally stated that if Sanchez failed to provide exemplars within the specified time and a motion was made to hold Sanchez in contempt "you had best bring your toothbrush." The order of Judge Caldwell provides that a failure to provide the exemplars "shall subject Respondent to contempt of this Court, and incarceration and/or fine as may be imposed by this Court for such contempt."

Sanchez appealed Judge Caldwell's order.

*Concepts on Which Our Decision is Not Based*

■ (a) Sanchez' handwriting exemplars could be compelled on pain of contempt once Sanchez was before the court. *State v. Archuleta*, 82 N.M. 378, 482 P.2d 242 (Ct.App.1970). The Attorney General argues that Sanchez was before the court because he appeared and contested the contempt motion which resulted in the ruling that he had not been properly served with Judge Maloney's ex parte order. This argument goes to physical presence; that is, jurisdiction over the person of Sanchez.

■ What is involved here is jurisdiction in the sense of the court's authority to issue the order concerning handwriting exemplars. *Heckathorn v. Heckathorn*, 77 N.M. 369, 423 P.2d 410 (1967); *State v. Patten*, 41 N.M. 395, 69 P.2d 931 (1937). Absent such authority, Sanchez' physical presence could not validate the court's order and could not bring the matter within *State v. Archuleta*, supra. *State v. Chacon*, 62 N.M. 291, 309 P.2d 230 (1957). See *State v. Halsell*, 81 N.M. 239, 465 P.2d 518 (Ct.App.1970) which uses the phrase "before the court" in the sense of presence pursuant to a criminal charge. See also *Hammond, et al. v. 8th Jud. Dist. Ct.*, N.M., 30 N.M. 130, 228 P. 758, 39 A.L.R. 1490 (1924). The court's authority to issue the order for handwriting exemplars may not be resolved on the basis that Sanchez was physically before the court.

(b) The appeal concerns the court's authority to issue the order for handwriting exemplars. No issue concerning self-incrimination or search and seizure is presented. See *United States v. Mara*, 410 U.S. 19, 93 S.Ct. 774, 35 L.Ed.2d 99 (1973); *United States v. Dionisio*, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973); *State v. Archuleta*, supra.

■ (c) Handwriting exemplars could be compelled if the requirements for a search warrant were met. *Maryland Penitentiary v. Hayden*, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). The authority for a search warrant is stated in Rule of Crim. Proc. 17. Setting aside the question of probable cause, which we do not discuss, we consider the purposes for which a search warrant may be issued.

■ Rule of Crim.Proc. 17(a) states three purposes for which a search warrant may be issued. The investigator's affidavit concluded that the exemplars were for the third purpose—to obtain evidence which "would be material evidence in a criminal prosecution." The affidavit, however, refutes its own conclusion. The affidavit seeks handwriting exemplars in order to compare the handwriting of Sanchez with handwriting on the false claims. This comparison is desired because the investigator does not know whether Sanchez is involved in the false claims. The affidavit contains nothing indicating Sanchez' handwriting exemplars "would be" evidence. The requirements for issuance of a search warrant were not met. The court's authority to issue the order compelling handwriting exemplars may not be resolved on the basis that the order was, in effect, a search warrant.

We have excluded search warrants as a decisional ground in order to emphasize that the issue is the court's authority to compel the handwriting exemplars. The Attorney General does not claim that the court's authority to issue search warrants was, in this case, authority to order the handwriting exemplars.

*The Court's Authority to Compel Handwriting Exemplars*

No complaint, information or indictment has been filed which names Sanchez; no criminal prosecution has been commenced. Rule of Crim.Proc. 5. Sanchez is not an "accused" or a "defendant." Section 31–1–2, N.M.S.A.1978. Sanchez has not been arrested and no warrant for his arrest has been issued. Specifically, no action is pending against Sanchez. These circumstances present a case of first impression in New Mexico. See *State v. Hudman*, 78 N.M. 370, 431 P.2d 748 (1967) where the handwriting specimen was obtained by false pretense, but after arraignment; *State v. Sneed*, 78 N.M. 615, 435 P.2d 768 (1967) and *State v. Renner*, 34 N.M. 154, 279 P. 66 (1929) where the handwriting exemplar was obtained voluntarily, but after arrest; *State v. Barela, et al.*, 23 N.M. 395, 168 P. 545, L.R.A. 1918B 844 (1917) where there was compulsory comparison of footprints, but after arrest. In each of these cases the appellate issue concerned self-incrimination. Compare *State v. Jamerson*, 85 N.M. 799, 518 P.2d 779 (Ct.App.1974).

In support of his claim that the court had no authority to issue the order for handwriting exemplars, Sanchez cites *United States v. Holland*, 552 F.2d 667 (5th Cir. 1977), opinion withdrawn, 565 F.2d 383 (5th Cir. 1978). *Holland*, supra, is quite similar to this case; there, the United States attorney filed a motion to compel handwriting exemplars. Pointing out that federal district courts were courts of limited jurisdiction and that Congress had not conferred jurisdiction on federal district courts to compel handwriting exemplars prior to arrest or charge, the circuit court held the district court lacked authority to compel the handwriting exemplars. Holland was not in contempt of court for violating an order entered without authority.

In holding that federal district courts were of limited jurisdiction, *United States v. Holland*, supra, comments that most state trial courts are courts of general jurisdiction. The Attorney General points out that New Mexico district courts are courts of general jurisdiction and, on the basis of this general jurisdiction, concludes the district court had authority to compel the exemplars. This poses the question in this case; however, it does not provide the answer.

N.M.Const., art. VI, § 13 states: "The district court shall have original jurisdiction in all matters and causes not excepted in this constitution, and such jurisdiction of special cases and proceedings as may be conferred by law . . . ."

Matters and causes excepted from the Constitution are not involved. In this case, the above-quoted constitutional provision confers authority upon the district court in two ways—by "original jurisdiction in all matters and causes" and by jurisdiction conferred by law.

No statute confers jurisdiction upon the district court to order the furnishing of handwriting exemplars in this case. A grand jury could issue a subpoena for the exemplars and the district court could enforce the subpoena. Section 31–6–12, N.M.S.A.1978. This procedure was not followed. A former statute, compiled as § 41–3–8 (Second), N.M.S.A.1953 (1st Repl. Vol. 6) authorized the prosecuting attorney to subpoena witnesses in limited situations "on approval of the district judge . . . ." Assuming that the Attorney General, in this case, was proceeding as a prosecuting attorney (however, see *State v. Reese*, 78 N.M. 241, 430 P.2d 399 (1967)), the repeal of this statute by Laws 1972, ch. 71, § 18, removed any authority conferred by § 41–3–8 (Second), supra. See *State v. Chavez*, —— N.M. ——, 599 P.2d 1067 (1979).

If the order compelling exemplars is likened to an order compelling compliance in an administrative matter, the absence of authorizing legislation concerning the compelling of handwriting exemplars is to be compared with specific authorizing legislation in certain administrative matters. Concerning the Organized Crime Commission, see § 29–9–5(D), N.M.S.A.1978; see *In re Investigation No. 2, Etc.*, 91 N.M. 516, 577 P.2d 414 (1978). Compare *State ex rel. Environmental v. Albuquerque Pub.*, 91 N.M. 125, 571 P.2d 117 (1977); *State v.*

*Galio*, 92 N.M. 266, 587 P.2d 44 (Ct.App. 1978). Concerning unemployment compensation, see § 51–1–29, N.M.S.A.1978. Concerning witnesses to gambling, see § 30–19–14, N.M.S.A.1978 and the restrictive interpretation of that statute in 1961–62 Attorney General Opinions, No. 61–88.

▪ The Rules of Criminal Procedure do not authorize the order for handwriting exemplars. Rule of Crim.Proc. 14, pertaining to arrest warrant and summons, requires a criminal action. Rule of Crim.Proc. 28, pertaining to disclosure of evidence by a defendant, and Rule of Crim.Proc. 29, pertaining to depositions, apply after the filing of an information or indictment. Rule of Crim.Proc. 33, pertaining to pretrial motions, contemplates a pending criminal proceeding as does Rule of Crim.Proc. 36, pertaining to pretrial hearings. Rule of Crim. Proc. 48 pertains to securing the attendance of witnesses in criminal cases. No criminal proceeding exists at this point.

There being neither statute nor rule authorizing the order to compel exemplars, does such authority exist under the constitutional grant of "original jurisdiction" in N.M.Const. art. VI, § 13?

▪ The constitutional grant of "original jurisdiction" means the district courts are courts of general jurisdiction. *Trujillo v. State*, 79 N.M. 618, 447 P.2d 279 (1968); *State v. Patten*, supra. Compare *Board of County Com'rs of Torrance County v. Chavez*, 41 N.M. 300, 67 P.2d 1007 (1937) which refers to "general powers."

What, however, is included within the meaning of general jurisdiction? Criminal cases are included, *State v. Vaughn*, 74 N.M. 365, 393 P.2d 711 (1964), but we have no criminal case because there has been neither charge nor arrest.

▪ The "original jurisdiction" of N.M. Const., art. VI, § 13, that is, the general jurisdiction of the district courts, covers those matters known "to the common law and equity practice of England prior to 1776 . . . ." *In re Forest*, 45 N.M. 204, 113 P.2d 582 (1941); see *Postal Finance Company v. Sisneros*, 84 N.M. 724, 507 P.2d 785 (1973).

▪ To the extent that an order compelling handwriting exemplars in aid of a criminal investigation may be likened to depositions in a criminal case, *State v. Armijo*, 72 N.M. 50, 380 P.2d 196 (1963) states: "[T]here is no question but that under the common law, the defendant had no right to perpetuate the testimony or to take depositions of witnesses, either for or against him." No authority is cited in *Armijo*, supra, in support of the quoted statement. The annotation, Ann.Cas. 1916 A, 1066, suggests the quoted statement is too broad, that in certain limited situations (not applicable in this case) depositions could be used in criminal proceedings. Nevertheless, the annotation, generally, supports *State v. Armijo*, supra.

To the extent that an order compelling handwriting exemplars in aid of a criminal investigation may be likened to an order compelling the production of documents for inspection, the sparse authority found indicates that production was extremely limited.

Discussing an 1851 English statute authorizing the inspection of documents, Pollock, *Power of the Courts of Common Law to Compel the Production of Documents for Inspection*, (T. & J. W. Johnson, Philadelphia, 1853), states that prior to enactment of the 1851 statute, discovery in equity was not permissible in any proceeding "not purely of a civil character . . . ." In addition, "[b]efore this act [the 1851 statute] came into operation, the Courts always required that an application for inspection should be made after action brought." See II Chitty, *Archbold's Practice of The Court of Queen's Bench*, Sixth Edition, Chap. XIV (Sweet, Chancery Lane, London, 1838). In civil cases, inspection prior to "action pending" seems to have been limited to a mandamus proceeding upon a claim of right. *Hodges v. Atkis*, 96 English Reports (Full Reprint) 516; *The King v. Tower*, 105 English Reports (Full Reprint) 795.

The order compelling handwriting exemplars was not entered in a proceeding

"purely of a civil character"; it was entered before "action brought" or "action pending" in aid of a criminal investigation. We have not been cited to any authority suggesting such an order was authorized either at common law or equity prior to 1776, and we have found no such authority.

We hold that, absent legislative authorization, Judge Caldwell had no authority to order Sanchez either to produce handwriting exemplars or be held in contempt, prior to arrest or charge. This holding is consistent with our Rules of Criminal Procedure which limit discovery to situations where a criminal proceeding has been commenced. This holding is also consistent with *Application of Mackell*, 59 Misc.2d 760, 300 N.Y.S.2d 459 (1969). In *Mackell*, the district attorney applied for an order directing that a suspect's beard be shaved before putting the suspect in a lineup. The suspect was in jail, on an unrelated matter, but was not a defendant in the case for which a lineup was sought. The application was denied "for want of power."

The order directing Sanchez to furnish handwriting exemplars, or be held in contempt, is reversed.

IT IS SO ORDERED.

HERNANDEZ and LOPEZ, JJ., concur.